**In re Elmer Claire RASMUSSEN.**

**PIONEER BANK OF LONGMONT,**
Creditor–Appellant,

v.

**Elmer Claire RASMUSSEN,**
Debtor–Appellee.

No. 88–2593.

United States Court of Appeals,
Tenth Circuit.

Nov. 1, 1989.

Mark M. Haynes (Joseph C. French with him on the brief), Boulder, Colo., for creditor-appellant.

Thomas E. Croak, Longmont, Colo., for debtor-appellee.

Before LOGAN, SETH and MOORE, Circuit Judges.

PER CURIAM.

This case presents the issue of what conduct constitutes bad faith sufficient to deny confirmation of a Chapter 13 plan. Elmer Claire Rasmussen, the debtor, had more than $100,000 in unsecured debts, including a debt of more than $40,000 to the Pioneer Bank of Longmont (Pioneer). Mr. Rasmussen filed for relief under a Chapter 7 bankruptcy proceeding. All of his unsecured debts were discharged with the exception of his debt to Pioneer. The bankruptcy court in the Chapter 7 action found that the debt to Pioneer had been obtained through fraud, refused to discharge the debt through the bankruptcy proceeding pursuant to 11 U.S.C. § 523(a)(2), and entered judgment on the note underlying the debt. Within two weeks of the conclusion of the Chapter 7 proceeding, Mr. Rasmussen filed a "reorganization" plan under Chapter 13.[1] The only debt listed was that to Pioneer. The plan proposed a return to Pioneer of approximately 1.5% of the amount due, over a three-year period. Over the objection of Pioneer and after a hearing, the bankruptcy court confirmed the plan, reasoning that it is not per se bad faith to file successive petitions under Chapter 7 and Chapter 13, and applying the suggested factors from *Flygare v. Boulden,* 709 F.2d 1344 (10th Cir.1983). The district court affirmed the bankruptcy court's confirmation of the Chapter 13 plan. Pioneer appeals. For the reasons set forth below, we reverse.

---

1. Successive filing of a Chapter 7 bankruptcy and a Chapter 13 plan is often referred to as a "Chapter 20" situation.

We are bound by the factual findings of the bankruptcy court unless they are clearly erroneous. The legal conclusions of the bankruptcy court and the district court are subject to *de novo* review on appeal. *Rowe Int'l, Inc. v. Herd (In re Herd)*, 840 F.2d 757, 759 (10th Cir.1988); *Branding Iron Motel, Inc. v. Sandlian Equity, Inc. (In re Branding Iron Motel)*, 798 F.2d 396, 399–400 (10th Cir.1986).

Chapter 13 of the Bankruptcy Code is a liberal provision which allows discharge of all debts except those defined by 11 U.S.C. § 1322(b)(5) (cure of default on long-term debt when final payment is due after proposed final payment under Chapter 13 plan) and 11 U.S.C. § 523(a)(5) (alimony and child support). 11 U.S.C. § 1328(a). However, the plan may only be confirmed if it is proposed in good faith. 11 U.S.C. § 1325(a)(3). Neither the bankruptcy code itself nor its legislative history defines the term "good faith," and definition of the term in the context of successive filings has evolved through case decisions since the 1984 amendments to the code. This circuit has rejected a per se bad faith standard, holding instead that bad faith is to be judged by the totality of the circumstances on a case by case basis. *Flygare v. Boulden*, 709 F.2d 1344 (10th Cir.1983). In *Flygare*, the court set forth eleven factors to be considered, among other relevant circumstances, in determining whether the Chapter 13 plan was filed in good faith.[2]

Other circuits have rejected a per se bad faith standard in favor of a "totality of circumstances" approach. *See State of Ohio, Student Loan Comm'n v. Doersam (In re Doersam)*, 849 F.2d 237, 239 (6th Cir.1988); *In re Hines*, 723 F.2d 333, 334 (3d Cir.1983); *Public Fin. Corp. v. Freeman (In re Freeman)*, 712 F.2d 219, 221 (5th Cir.1983); *Kitchens v. Georgia R.R. Bank and Trust Co. (In re Kitchens)*, 702 F.2d 885, 888–89 (11th Cir.1983); *Deans v. O'Donnell (In re Deans)*, 692 F.2d 968, 970–72 (4th Cir.1982); *Ravenot v. Rimgale (In re Rimgale)*, 669 F.2d 426, 432–33 (7th Cir.1982); *United States v. Estus (In re Estus)*, 695 F.2d 311, 316–17 (8th Cir. 1982)[3]; *Goeb v. Heid (In re Goeb)*, 675 F.2d 1386, 1389–90 (9th Cir.1982); *Barnes v. Whelan (In re Barnes)*, 689 F.2d 193, 198 (D.C.Cir.1982). "[B]oth pre-petition conduct and prior bankruptcy filings by the debtor may be relevant to the good faith inquiry under § 1325(a)(3)." *Neufeld v. Freeman*, 794 F.2d 149, 150 (4th Cir.1986).

Reviewing the totality of circumstances, we undertake *de novo* review of the circumstances surrounding Mr. Rasmussen's Chapter 13 filing. The bankruptcy court noted in its thoughtful recitation of the factors involved that the debtor's budget was "tight" and that he did not have more than $50 per month for debt repayment under the plan. R.V. IV, tr. at 20. Mr. Rasmussen's attorney pointed out that Mr. Rasmussen was in the business of buying

---

**2.** The eleven factors set forth in *Flygare* include:

1) the amount of proposed payments and the amount of the debtor's surplus;

2) the debtor's employment history, ability to earn and likelihood of future increases in income;

3) the probable or expected duration of the plan;

4) the accuracy of the plan's statement of the debts, expenses and percentage repayment of unsecured debt and whether any inaccuracies are an attempt to mislead the court;

5) the extent of preferential treatment between classes of creditors;

6) the extent to which secured claims are modified;

7) the type of debt sought to be discharged and whether any such debt is non-dischargeable in Chapter 7;

8) the existence of special circumstances such as inordinate medical expenses;

9) the frequency with which the debtor has sought relief under the Bankruptcy Reform Act;

10) the motivation and sincerity of the debtor in seeking Chapter 13 relief; and

11) the burden which the plan's administration would place upon the trustee.

709 F.2d at 1347–48 (quoting *United States v. Estus (In re Estus)*, 695 F.2d 311, 317 (8th Cir. 1982)).

**3.** *In re Estus* continues to be used widely as authority for this proposition. It was modified in *Education Assistance Corp. v. Zellner*, 827 F.2d 1222, 1227 (8th Cir.1987) (relevant factors to the analysis of good faith after the 1984 amendments include "whether the debtor has stated his debts and expenses accurately; whether he has made any fraudulent misrepresentation to mislead the bankruptcy court; or whether he has unfairly manipulated the Bankruptcy Code.")

and selling sheep and lambs, a business which made necessary the use of a bank account for deposits and payments. He pointed out that Mr. Rasmussen would not be able to get the fresh start envisioned by the bankruptcy code if Pioneer's debt were not discharged and Mr. Rasmussen's banking accounts were garnished repeatedly by Pioneer. *Id.* at 5, 13.

In addition, the bankruptcy court noted that the stated legislative purpose of Chapter 13 was to achieve broad, extensive, and unqualified discharge of debts for a working debtor. *Id.* at 17. The bankruptcy court noted that there is no bar to successive filings under Chapter 13, and the very fact that the exceptions to Chapter 13 discharge are so limited is an indication of legislative intent that objections to discharge be scrutinized closely. *Id.* The bankruptcy court noted the distinction between "deviousness" and "clever lawyering," drawing strength for confirmation of Mr. Rasmussen's plan from the lack of congressional bar to successive Chapter 7 and Chapter 13 filings. *Id.* at 18–19.

On appeal, the district court agreed, citing *In re Chaffin*, 816 F.2d 1070, 1073–74 (5th Cir.1987), *modified on rehearing*, 836 F.2d 215, 216 (5th Cir.1988), for the proposition that the fact of successive filings does not, by itself, constitute bad faith in a Chapter 13 filing. R.V. II, tab 12 at 3. *See also Downey Sav. and Loan Ass'n v. Metz, (In re Metz)*, 820 F.2d 1495, 1497 (9th Cir.1987); *In re Baker*, 736 F.2d 481, 482 (8th Cir.1984); *cf. Jim Walter Homes, Inc. v. Saylors (In re Saylors)*, 869 F.2d 1434, 1435–36 (11th Cir.1989) (attempting to discharge a debt in a Chapter 13 filing which is not dischargeable in a Chapter 7 is not per se bad faith); *In re Doersam*, 849 F.2d at 239 (same).

We agree with the Fifth Circuit's holding in *Chaffin*, but find that more factors than merely the fact of successive filings are involved with the case before us. We note also that *Chaffin* was an involuntary proceeding. Mr. Rasmussen originally was not able to meet the jurisdictional limits of a Chapter 13 proceeding because his unsecured debts totalled more than $100,000 in contravention of 11 U.S.C. § 109(e). He proceeded to discharge all his unsecured debts except that of Pioneer through a voluntary Chapter 7 proceeding. During the course of that proceeding, the bankruptcy court disallowed discharge of his debt to Pioneer, pursuant to 11 U.S.C. § 523(a)(2), because he provided fraudulent information to obtain the loan; the court entered judgment on Pioneer's note. Twelve days after the conclusion of the Chapter 7 proceeding, Mr. Rasmussen initiated a proceeding under Chapter 13, listing his debt to Pioneer as his only obligation. His plan proposed to pay $50 per month for 36 months, less than 1.5% of the value of the debt. In effect, confirmation of Mr. Rasmussen's Chapter 13 plan is tantamount to a discharge of his debt to Pioneer.

We agree with the Fourth Circuit in *Neufeld*, when it stated:

[A]lthough the discharge of an obligation which would be nondischargeable in Chapter 7 is not, standing alone, a sufficient basis on which to find bad faith or deny confirmation, it is a relevant factor to be considered in the § 1325(a)(3) good faith inquiry. Resort to the more liberal discharge provisions of Chapter 13, though lawful in itself, may well signal an "abuse of the provisions, purpose, or spirit" of the Act, especially where a major portion of the claims sought to be discharged arises out of pre-petition fraud or other wrongful conduct and the debtor proposes only minimal repayment of these claims under the plan. Similarly, a Chapter 13 plan may be confirmed despite even the most egregious pre-filing conduct where other factors suggest that the plan nevertheless represents a good faith effort by the debtor to satisfy his creditors' claims.

This approach is not at cross-purposes with the admittedly liberal provisions of Chapter 13, under which debts resulting from illegal acts such as embezzlement, fraud, and willful and malicious injury, ordinarily may be discharged. Rather, it ensures against manipulation of the statute by debtors who default on obligations grounded in dishonesty and who

subsequently seek refuge in Chapter 13 in order to avoid, at minimal cost, a non-dischargeable debt.

794 F.2d at 152–53; *see also Fidelity & Casualty Co. of N.Y. v. Warren (In re Warren)*, 89 B.R. 87, 90–91 (9th Cir. BAP 1988); *Johnson v. Vanguard Holding Corp. (In re Johnson)*, 708 F.2d 865, 868 (2d Cir.1983).

On balance, using the "totality of the circumstances" approach required by *Flygare*, we conclude that Mr. Rasmussen's Chapter 13 filing was not made in good faith. We reach this conclusion because the Chapter 13 filing was a manipulation of the bankruptcy system in order to discharge a single debt for de minimis payments under a Chapter 13 plan which was ruled not dischargeable under an immediately previous Chapter 7 filing, when the debtor could not originally meet the jurisdictional requirements of Chapter 13.

Because the bankruptcy court and the district court previously considered these factual matters and reached what we believe to be an erroneous conclusion, we do not need to remand this matter for further consideration below. The judgment of the United States District Court for the District of Colorado is REVERSED. The debtor's Chapter 13 debt reorganization plan is DISMISSED.