In re Penny CORINO, Debtor.

Bankruptcy No. 95–61064.

United States Bankruptcy Court,
N.D. New York.

Nov. 29, 1995.

Peter A. Orville, Vestal, NY, for Debtor.

Hinman, Howard & Kattell (Harvey Mervis, of counsel), Binghamton, NY, for Binghamton Savings Bank.

Mark W. Swimelar, Chapter 13 Trustee, Syracuse, NY.

## MEMORANDUM–DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

STEPHEN D. GERLING, Chief Judge.

Presently before the Court for confirmation is the Chapter 13 Plan ("Plan") of Penny Corino ("Debtor") filed on March 31, 1995, and a motion by Binghamton Savings Bank ("BSB") seeking abstention and dismissal of Debtor's case pursuant to § 305(a) of the

Bankruptcy Code (11 U.S.C. §§ 101–1330) ("Code").

On May 23, 1995, BSB filed an objection to confirmation of Debtor's Plan pursuant to Code § 1325(a)(3). A hearing on confirmation of Debtor's Plan was held on May 31, 1995, at the conclusion of which the Court scheduled an evidentiary hearing for July 24, 1995. Thereafter, by virtue of an Order dated July 17, 1995 shortening notice pursuant to Federal Rules of Bankruptcy Procedure ("Fed.R.Bankr.P.") 9006(c), BSB filed a motion seeking an order of abstention and dismissal of Debtor's case pursuant to Code § 305(a).

Oral argument on BSB's motion to abstain and dismiss was heard in Utica, New York on July 24, 1995, the date of the scheduled evidentiary hearing. Following oral argument, the Court held the evidentiary hearing on BSB's objection to confirmation of Debtor's Plan and the parties were thereafter afforded an opportunity to file memoranda of law. BSB's Code § 1325(a)(3) objection to the confirmation of Debtor's Plan and BSB's Code § 305(a) motion for abstention and dismissal of Debtor's case were submitted for decision on August 21, 1995.

### JURISDICTIONAL STATEMENT

The Court has core jurisdiction over the parties and subject matter of this contested matter pursuant to 28 U.S.C. §§ 1334(b) and 157(a), (b)(1), (b)(2)(A), (L), and (O).

### FACTS

BSB employed Debtor for approximately 13 years as an Assistant Treasurer. *See* BSB's Exhibit "A", Debtor's Statement to Federal Bureau of Investigation. On or about 1985, BSB terminated Debtor's employment as a result of her embezzling funds from BSB. *Id.* Thereafter, on August 12, 1985, Debtor was convicted in the United States District Court of the Northern District of New York ("District Court") of wilfully embezzling approximately $9,000 from BSB in violation of 18 U.S.C. § 656. Although there was no order for payment of restitution, Debtor was sentenced to imprisonment for two years commencing September 4, 1985.

Without specifying a date, the parties stipulated that BSB had commenced a civil action against Debtor for embezzlement. On or about April 18, 1986, the Honorable Richard F. Kuhnen of the New York State Supreme Court, Broome County entered summary judgment ("civil judgment") against Debtor in the amount of $101,917.33.[1]

On direct examination by BSB, Thomas Lamphere ("Lamphere"), BSB's Risk Management Officer, described Debtor's embezzlement scheme as "very ingenious." On cross-examination, Lamphere conceded that because Debtor was a "bonded-employee," insurance covered the losses caused by her embezzlement scheme less a deductible of $50,000. Lamphere also conceded on cross-examination that in its effort to enforce the civil judgment, BSB had seized Debtor's savings account[2] and had collected approximately $6,500 pursuant to various income executions.

On or about November 22, 1985, Debtor filed a motion pursuant to Federal Rules of Criminal Procedure ("Fed.R.Crim.P.") 35 in the District Court in order to have her imprisonment sentence reduced ("Rule 35 motion").[3] On direct examination by her counsel, Debtor testified that her Rule 35 motion was a "sincere and honest feeling on my part that I needed to repay many people, my family, repayment to society and to the bank [BSB]." Debtor also testified that at the time of her Rule 35 motion she expected to repay "the conviction amount of $9,000." On or about June 5, 1986, the Honorable Howard G. Munson of the District Court granted Debtor's Rule 35 motion and suspended the remaining term of her imprisonment effective June 24, 1986.

---

1. Summary judgment was entered pursuant to New York Civil Practice Law & Rules ("NYCPLR") § 3213. The judgment amount was $94,704.49 plus interest at 9% per annum from June 19, 1985, and costs and disbursements.

2. Lamphere could not recall the amount seized from Debtor's savings account.

3. Fed.R.Crim.P. 35 states, in relevant part, that "The court may reduce a sentence ... within 120 days after the sentence is imposed ..."

Debtor testified on direct examination that subsequent to her release from prison she established residence in Las Vegas, Nevada. Shortly thereafter BSB contacted her regarding the satisfaction of its civil judgment. Debtor testified that she did not know of the existence of the civil judgment prior to this contact. Thereafter, on July 22, 1987, Debtor filed for relief in the District of Nevada under Chapter 13 of the Code ("Petition 1").

On January 6, 1988, BSB filed a motion pursuant to Code § 1325(a)(1) and (3) objecting to Debtor's proposed Chapter 13 plan. BSB argued that Debtor's plan was not proposed in good faith and that she was ineligible for relief under Chapter 13 because her noncontingent, liquidated, unsecured debts were greater than $100,000.[4]

Prior to the return date of BSB's Code § 1325 motion, Debtor's counsel moved to convert the case to Chapter 11. Although Debtor's case was converted on April 14, 1988, Debtor testified on direct examination that she did not authorize the same and that her attorney forged her signature on the moving papers. Subsequent to conversion of Debtor's case to Chapter 11, BSB filed a dischargeability objection pursuant to Code § 1141(d)(2) and § 523. However, prior to the disposition of BSB's dischargeability objection, Debtor's case was dismissed pursuant to a Conditional Order of Dismissal entered on March 31, 1989, for failure to pay Chapter 11 filing fees.

Sometime in 1988, during the pendency of Petition 1, Debtor reestablished residence in New York. On or about June 12, 1989, BSB served an income execution on Debtor's employer at that time, Ridley–Lowell Private Business School. Approximately two months later, on August 24, 1989, Debtor filed a Chapter 13 petition ("Petition 2") in the Northern District of New York.

BSB alleges that Debtor's Petition 2 listed BSB as a secured creditor and failed to disclose that Debtor had previously filed a bankruptcy petition. Debtor testified on direct examination that her counsel of record

at that time did not give "much credence to anything I was telling him ..." and failed to notify her of scheduled meetings of creditors pursuant to Code § 341. Debtor's Petition 2 was dismissed on or about December 21, 1989.

On February 6, 1991, BSB served an income execution on Debtor's new employer, Cornell Co–Operative Extension. Debtor then approached her present counsel, Peter A. Orville, Esq. ("Orville"). Debtor testified that she told Orville that she was "look[ing] for ... an end ... a finality that I could see ..." to BSB's claim.

On March 11, 1991, Debtor again filed for relief in the Northern District of New York ("Petition 3") under Chapter 13 of the Code. Debtor believed that she was within the debt limits for Chapter 13 if BSB's claim was reduced by the amount that BSB had been indemnified by its insurance carrier and reduced by the amount that Debtor had paid through her seized savings account and various income executions. Nevertheless, Debtor voluntarily dismissed Petition 3 on September 23, 1991, because of the debt limit requirements for Chapter 13.

Debtor testified that after the dismissal of Petition 3 she instructed Orville to negotiate a payment schedule for BSB's claim. Debtor testified that she instructed Orville to offer BSB $500 per month for ten years and her pension in full satisfaction of her debt "so it was not the rest of my life that I was looking at or the rest of my daughter's life." Debtor also testified that she moved in with her mother in order to make the proposed payments to BSB. Lamphere, however, testified that there were no such negotiations between BSB and Orville. Although Lamphere did recall that there had been discussions concerning Debtor's pension, the parties did not reach a compromise.

Debtor further testified that on December 8, 1994, Orville contacted her regarding the 1994 amendments to Code § 109(e) which increased the debt limits for Chapter 13 eligi-

---

4. Prior to the Bankruptcy Reform Act of 1994, Pub.L. 103–394 (effective Oct. 22, 1994), only individuals with regular income and noncontingent, liquidated, unsecured debts of less than $100,000 and noncontingent, liquidated, secured debts of less than $350,000 were eligible to be debtors under Chapter 13.

bility. *See supra* note 4. Debtor, however, chose not to file another Chapter 13 petition because she "had adjusted to the [BSB] garnishment."

On or about March 22, 1995, USA Service Inc. ("USA")[5] served an income execution on Debtor's employer, Broome Community College. *See* Debtor's Exhibit 2. Debtor testified that as a result of BSB's[6] and USA's income executions, 25% of her wages were being garnished. As such, on March 31, 1995, Debtor filed her current Chapter 13 petition ("Petition 4").

At present, Debtor is widowed with one dependent, her seven year old daughter. *See* Petition 4, Schedule I. She is a Program Director at Broome Community College with a net monthly income of $2,174.08 and $1,893.00 in net monthly expenses. *Id.* Debtor's Petition 4 schedules list four creditors. *Id.*, Schedule F. BSB alleges that Debtor failed to list a debt of approximately $56,000 owed to the Internal Revenue Service ("IRS"). Debtor, however, testified that after discussions with an IRS agent, she concluded that the IRS would "not [be] pursuing the debt."[7]

Debtor has not listed any interest in real property and has claimed exemptions to the extent of $2,400 in a 1989 Toyota Camry, $500 in clothing and $1,250 in household goods, furniture, etc.[8] *Id.*, Schedule C. Debtor's total liabilities are $126,446.71, with BSB's and USA's claims comprising $115,000 and $9,425.71, respectively. *Id.*, Summary of Schedules. Debtor's Plan proposes to make monthly payments of $280 to the Chapter 13 Trustee over a five year period and yields a 10% dividend to unsecured creditors.

## DISCUSSION

 Initially, the Court addresses BSB's Code § 305(a) motion for abstention and dismissal of Debtor's case. This section of the Code is sparingly used because dismissal pursuant to Code § 305(a) is a matter of unreviewable discretion. *See* Code § 305(c); *In re Luftek, Inc.,* 6 B.R. 539, 548 (Bankr.E.D.N.Y.1980) ("The risk is compounded by the finality and non-appealability of an order entered under this section."). The movant carries a heavy burden given the non-appealability of an order issued pursuant to Code § 305. *See Matter of Condominium Ass'n of Plaza Towers South Inc.,* 43 B.R. 18, 20 (Bankr.S.D.Fla.1984); *In re Donaldson Ford, Inc.,* 19 B.R. 425, 435 (Bankr.N.D.Ohio 1982).

 Case law, in conformity with the plain language of Code § 305(a)(1), holds that dismissal is only appropriate when it serves the best interest of the creditors *and* the debtor. *See In re Whitby,* 51 B.R. 184, 185 (Bankr. E.D.Mich.1985) (citing *In re Pine Lake Village Apartment Co.,* 16 B.R. 750, 753 (Bankr. S.D.N.Y.1982)); *In re Business Information Co., Inc.,* 81 B.R. 382, 387 (Bankr.W.D.Pa. 1988) (citations omitted); *In re Mazzocone,* 183 B.R. 402, 421 (Bankr.E.D.Pa.1995) (citation omitted). In determining whether dismissal is in the best interest of creditors and the debtor, courts look to "the facts of the individual case" while considering a number of criteria. *See In re Fax Station, Inc.,* 118 B.R. 176, 177 (Bankr.D.R.I.1990) (citation omitted).

The court in *In re Business Information* identified three criteria that courts employ in making their determination.[9] *In re Business Information Co. Inc., supra,* 81 B.R. at 387;

---

5. USA is the collecting agency for Payco–General American. The underlying debt to Payco–General American is listed as a student loan in Debtor's current petition.

6. Although BSB does not dispute that it was garnishing Debtor's wages, there was no testimony regarding the date BSB served its income execution on Broome Community College.

7. The IRS has not filed a proof of claim in Debtor's present case.

8. Pursuant to Code § 522(b), New York Debtors may only utilize the exemptions available under

New York law or under federal law other than the Code. *See* New York Debtors & Creditor Law § 284.

9. Some courts rely on the three illustrative, but not restrictive, factors enumerated in the legislative history of Code § 305. *See e.g. In re Luftek, supra,* 6 B.R. at 539 ((1) an arrangement is being worked out by creditors and debtor out-of-court; (2) creditors are not prejudiced by the arrangement and; (3) an involuntary case has been commenced by a few recalcitrant creditors).

288

*see also In re Fax Station, Inc., supra,* 118 B.R. at 177 (identifying seven factors). First, abstention or dismissal is favored when the bankruptcy case centers on an unsettled issue of non-bankruptcy law. *In re Business Information Co. Inc., supra,* 81 B.R. at 387 (citations omitted). Second, courts rely on Code § 305(a) when another forum is available to determine the parties' interests and, in fact, such an action has been commenced. *Id.* (citations omitted). Third, economy and efficiency of administration favors abstention or dismissal. *Id.* (citations omitted).

▋ Debtor's case does not present unsettled issues of non-bankruptcy law. BSB argues, however, that Debtor may modify her income executions pursuant to state law and thereby "allow the Debtor's major creditors (BSB and USA Service) to receive regular payments on their judgments until the obligations have been paid in full." *See* BSB's Motion for Abstention at ¶ 11. Although a judgment *creditor* or judgment debtor may move at any time to modify an income execution pursuant to NYCPLR § 5231(i), such an action has not been commenced by either party. As such, there is no pending action in another forum to determine the parties' interests. Finally, this case does not present concerns of administrative economy and efficiency such that abstention and dismissal would be appropriate. *Compare In re Business Information Co., Inc., supra,* 81 B.R. at 386–387 (two party dispute over non-bankruptcy issue of first impression pending in the circuit court); *In re Fax Station, Inc., supra,* 118 B.R. at 176–178 (prior to filing of involuntary and voluntary petitions, state court receivership was pending and numerous state law issues had been raised).

The instant dispute essentially requires a determination of whether Debtor is entitled to relief under the Bankruptcy Code or whether she must continue to repay her obligations pursuant to income executions and other state collection laws. Certainly the interests of BSB would be better served by dismissal as it could continue to garnish Debtor's wages for what seems, from her perspective, to be an indefinite period of time. However, it is because of this same reason that dismissal would not be in Debt-

or's interest. *See e.g. In re Whitby, supra,* 51 B.R. at 185, 186; *In re Donaldson Ford, Inc., supra,* 19 B.R. at 435 (movants failed to demonstrate how denying debtor opportunity to reorganize and obtain fresh start under Chapter 11 is in debtor's interest). Although a Chapter 11 case, the court's reasoning in *In re Pine Lake Village Apartment Co.* is equally applicable to Chapter 13:

It defies credulity to say that the debtor's interest would be better served by a dismissal when the debtor voluntarily sought the mechanics of Chapter 11 for the purpose of rehabilitation and a fresh start. *In re Pine Lake Village Apartment Co., supra,* 16 B.R. at 753.

As such, the Court finds that BSB has not met the heavy burden of proof required for success on a Code § 305(a) motion for abstention and dismissal.

▋ The Court next addresses BSB's Code § 1325(a)(3) good faith objection to confirmation of Debtor's Plan. This section of the Code mandates that a Chapter 13 plan be proposed in good faith and not by any means forbidden by law. *See In re Klevorn,* 181 B.R. 8, 10 (Bankr.N.D.N.Y.1995) (Court's inquiry concerned whether plan and petition were filed in good faith); *In re Smith,* 848 F.2d 813, 819 (7th Cir.1988) (noting that Code § 1325(a)(3) provides that plan must be *proposed* in good faith and not that debt was incurred in good faith). As the Court pointed out in *Klevorn,* the Code does not define the term "good faith." *Id.* (citation omitted); *see In re Schaitz,* 913 F.2d 452, 455–456 (7th Cir.1990) (collecting cases addressing 'good faith' and noting lack of precise definition). This Court has consistently employed a totality of circumstances test in determining whether a plan has been proposed in good faith. *See In re Klevorn, supra,* 181 B.R. at 10; *In re Santa Maria,* 128 B.R. 32, 36 (Bankr.N.D.N.Y.1991); *In re Sutliff,* 79 B.R. 151, 154 (Bankr.N.D.N.Y.1987) (citing *In re Johnson,* 708 F.2d 865 (2d Cir.1983) (per curiam)); *In re Makarchuk,* 76 B.R. 919, 922 (Bankr.N.D.N.Y.1987); *see also In re LeMaire,* 898 F.2d 1346 (8th Cir.1990); *In re Smith, supra,* 848 F.2d at 819, 820 n. 8; *In re Okoreeh–Baah,* 836 F.2d 1030 (6th Cir.

1988); *Neufeld v. Freeman*, 794 F.2d 149 (4th Cir.1986).

The essence of the totality of circumstances test requires a determination of whether Debtor's conduct evinces a continuum of bad faith as it relates to the Chapter 13 Plan's proposal. *See In re Sutliff, supra*, 79 B.R. at 154. Thus, courts endorse a good faith inquiry broad in scope, ultimately converging on whether or not under the circumstances of the case there has been an abuse of the provisions, purpose or spirit of the Code. *See In re Aichler*, 182 B.R. 19, 21 (Bankr.S.D.Tex.1995) (citations omitted). In turn, the premises of the Code are that "... bankruptcy law should be a last resort; that if it is used, debtors should attempt repayment under chapter 13 ... and finally, whether the debtor uses chapter 7 ... or chapter 13, ... bankruptcy relief should be effective and should provide the debtor with a fresh start." H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 118 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6078–6079.

The good faith analysis includes consideration of the so called *Estus* factors: (1) the amount of the proposed payments and the amount of the debtor's surplus; (2) the debtor's employment history, ability to earn, and likelihood of future increases in income; (3) the duration of the plan; (4) the accuracy of the plan's statement of the debts, expenses and percentage repayment of unsecured debt, and whether any inaccuracies are an attempt to mislead the court; (5) the extent of preferential treatment of creditors; (6) the extent to which secured claims are modified; (7) the type of debt sought to be discharged, and whether any such debt is potentially nondischargeable in Chapter 7; (8) the existence of special circumstances such as inordinate medical expenses; (9) the frequency with which the debtor has sought relief under the Code; (10) the motivation and sincerity of the debtor in seeking Chapter 13 relief and; (11) the burden which the plan's administration would place upon the Chapter 13 trustee.[10] *In re Makarchuk, supra*, 76 B.R. at

922–923 (citing *In re Estus*, 695 F.2d 311, 317 (8th Cir.1982)); *see In re Sutliff, supra*, 79 B.R. at 154 (other factors include circumstances of incurring debt, the amount of attorney's fees, the debtor's degree of effort and percentage of debt repayment); *In re Tobiason*, 185 B.R. 59, 62 (Bankr.D.Neb. 1995).

BSB contends that Debtor's multiple bankruptcy filings evince bad faith. BSB also argues that the fact that embezzlement is the basis of the civil judgment is further evidence of Debtor's bad faith. BSB contends that Debtor's use of Chapter 13 to discharge an otherwise non-dischargeable debt is an abuse of the purpose and spirit of Chapter 13. Other factors relied upon by BSB include Debtor's inaccuracies in her petitions, that this is essentially a single debt filing, the meager repayment percentage, the lack of effort with regard to repayment of the obligation, and the lack of "fairness and honesty of intention toward the institution she embezzled from." BSB's Objection to Confirmation at 9.

The Court begins by dismissing BSB's allegation that Debtor's inaccuracies in her petitions evince bad faith. BSB directs the Court's attention to Petition 2 which lists BSB as a secured creditor and states that Debtor had not filed a previous petition. Debtor sufficiently explained that her counsel at that time did not "give much credence to anything that [she] was telling him ..." and even failed to notify her of Code § 341 meetings. Convinced by Debtor's credible testimony, this Court is unwilling to penalize Debtor for any neglect of counsel in properly characterizing BSB's claim and listing a prior petition that she filed. *See In re Johnson, supra*, 708 F.2d at 868. BSB also alleges that Debtor's Petition 4 fails to list an IRS debt of approximately $56,000. Debtor, however, offered uncontroverted testimony on BSB's cross-examination that after conversations with an IRS agent, Debtor had determined that the IRS would "not [be] pursuing the debt." As such, the

---

**10.** Although modified by *Education Assistance Corp. v. Zellner*, 827 F.2d 1222 (8th Cir.1987), the *Estus* test continues to be widely used. *Zellner* added the following factors: whether debtor has stated his debts and expenses accurately, whether the bankruptcy court has been misled, or whether the debtor has manipulated the Code. *Id.* at 1227.

Court is unconvinced that any inaccuracies in Debtor's petitions intended to mislead or manipulate the Court.

■■■■ However, Debtor's four bankruptcy filings over an eight year period and her invocation of Chapter 13 in order to discharge an arguably non-dischargeable obligation [11] certainly raises the specter of bad faith. *See e.g. In re Chaffin*, 816 F.2d 1070, 1074 (5th Cir.1987), *modified on reconsideration on other grounds*, 836 F.2d 215 (5th Cir.1988). Nevertheless, "[A] Chapter 13 plan may be confirmed despite even the most egregious pre-filing conduct where other factors suggest … a good faith effort by the debtor to satisfy [her] creditor's claims." *Neufeld v. Freeman, supra*, 794 F.2d at 153.

■■■■ The Court is well aware of case authority finding bad faith under factual circumstances which appear similar to the matter *sub judice*. For example, in *In re Rasmussen* the Tenth Circuit found bad faith in a so-called Chapter 20 case. *In re Rasmussen*, 888 F.2d 703 (10th Cir.1989) (per curiam). The Debtor sought to use Chapter 13 to "discharge a single debt … which was ruled nondischargeable under an immediately previous Chapter 7 filing, when the debtor could not originally meet the jurisdictional requirements of Chapter 13." *Id.* at 706. The Court nevertheless finds *Rasmussen* distinguishable.

Unlike the debtor in *Rasmussen*, who proposed only a three year plan, Debtor proposes to make payments over five years. Debtor's Plan provides a 10% dividend for general unsecured creditors, including BSB, as opposed to the 1.5% proposed in *Rasmussen*. Debtor's case is not a two party dispute, as Debtor testified that it was *USA's* income execution that caused her to file Petition 4. Debtor's Petition 4 schedules also list USA as having a $9,425.71 unsecured claim.[12] Furthermore, Debtor has not manipulated the Code by filing a so-called Chapter 20. In fact, Debtor testified that she did not file bankruptcy after Orville, her counsel, contacted her on December 8, 1994, regarding

the 1994 Bankruptcy Code amendments to the Chapter 13 debt limits. Debtor testified that she did not file for relief because she had "adjusted to the garnishment." It was only after another significant change in circumstances took place, namely, USA's income execution, that Debtor filed her present petition. Debtor testified that BSB's and USA's income executions resulted in 25% of her wages being garnished.

In contrast to the portrait of a fast dealing and manipulative debtor, the present case concerns a widowed mother who is seeking financial redemption for an acknowledged misdeed committed more than ten years ago. As a consequence of embezzling funds from BSB, Debtor has already served time in prison, has forfeited a savings account and since 1989 has paid BSB approximately $6,500 pursuant to various wage garnishment orders. *Compare In re LeMaire, supra*, 898 F.2d at 1350 (With three judges dissenting, Eighth Circuit reversed bankruptcy court and found bad faith where debtor's malicious pre-filing conduct included shooting creditor five times with the intent to kill.). Debtor now proposes to pledge all of her disposable income of $280 per month for five years "so it [is] not the rest of my life that I [am] looking at or the rest of my daughter's life."

■■■■ The Court also notes that a key factor in evaluating the totality of circumstances is witness credibility. The observance of witness demeanor, tone of voice, and an overall evaluation of testimony in light of its rationality or internal consistency aids the Court in its determination of good faith. Debtor offered credible testimony that she has attempted to negotiate a repayment plan with BSB. She testified that she instructed Orville to offer BSB her pension plan and $500 per month for ten years. Debtor also offered uncontroverted testimony that she moved in with her mother in order to make the proposed payments to BSB. Buttressing Debtor's testimony was Lamphere's admission on cross-examination that he recalled discussions concerning Debtor's pension plan.

---

11. Presumably BSB's claim would be non-dischargeable under Chapter 7 pursuant to Code § 523(a)(4).

12. BSB, in fact, acknowledges USA as one of "… Debtor's major creditors." *See* Motion for Abstention at ¶ 11; *see also supra* text at 288.

The Court also notes that in her Petition schedules, Debtor has not listed any interest in real property and has only claimed exemptions to the extent of $2,400 in a 1989 Toyota Camry, $500 in clothing and $1,250 in household goods, furniture etc. As such, Debtor's non-exempt assets are limited to her future earnings which, arguably, will increase over time given her steady employment and current position as Program Director at Broome Community College. Debtor's Chapter 13 Plan proposes to devote all of her disposable income to the Chapter 13 Trustee for five years. BSB has not objected to Debtor's budgeted expenses and, likewise, the Court does not find them objectionable.

After a thorough examination of the totality of circumstances, the Court finds that despite Debtor's egregious pre-filing conduct, namely, her embezzlement scheme, Debtor has demonstrated a good faith effort to satisfy her creditors' claims. Debtor not only appeared repentant, but her efforts in negotiation and her proposal to pledge all of her disposable income to a five year plan demonstrates a willingness to pay her debt to BSB. Also persuasive is the fact that Debtor has virtually no assets and must support a seven year old child. This Court, as perhaps Senior District Judge Munson did previously, finds an honesty of intention in Debtor's words and conduct and concludes that she is deserving of a fresh start such that there is "a finality that [she can] see ..." to BSB's claim.

For the foregoing reasons, it is hereby

ORDERED that BSB's motion for abstention and dismissal of Debtor's case pursuant to Code § 305(a) is denied, and it is further

ORDERED that BSB's objection to confirmation of Debtor's Chapter 13 Plan pursuant to Code § 1325(a)(3) is denied, and it is further

ORDERED that Debtor's proposed Chapter 13 Plan is confirmed and the Chapter 13 Trustee shall forthwith submit a separate proposed order of confirmation.