**In re Finis W. SMITH, and Doris L. Smith, Debtors.**

**UNITED STATES of America, Appellant,**

**v.**

**Finis W. SMITH, and Doris L. Smith, Appellees.**

**Bankruptcy No. 95–C–899–K.**

United States District Court, N.D. Oklahoma.

May 8, 1996.

Laurence K. Williams, Robert S. Watkins, Loretta Argrett, U.S. Department of Justice, Tax Division, Washington, DC, for appellant.

Gary W. Wood, Tulsa, OK, for appellees.

---

2. Missouri statute 454.420 was amended in 1986, but the relevant section was unchanged.

## ORDER

KERN, District Judge.

On September 1, 1995, the Bankruptcy Court confirmed Appellee's (Debtor below) Chapter 13 Plan over the objection of the Appellant United States of America. Appellant appeals the decision of the Bankruptcy Court, and asserts that the Bankruptcy Court's finding that the Chapter 13 Plan was proposed in good faith is clearly erroneous. For the reasons discussed below, the Bankruptcy Court's decision is **AFFIRMED**.

## I. STATEMENT OF FACTS & PROCEDURAL HISTORY

Appellee filed a voluntary petition under Chapter 13 on July 28, 1995. [*See* Record on Appeal ("ROA"), Docket for Case No. 95–02284–W]. Appellees submitted a "Schedule I—Current Income of Individual Debtors" indicating that Appellees' sole source of income was from Social Security and "pension or retirement." Appellees total combined monthly income is listed as $2,503. [*See* ROA, Schedule I—Current Income of Individual Debtors.] Appellees' monthly expenses total $2,095. [*See* ROA, Schedule J—Current Expenditures of Individual Debtors.] Appellees indicated their total projected monthly disposable income at $408.

Appellant filed an objection to confirmation of the Plan on August 29, 1995. At the Hearing on Confirmation of the Plan on August 30, 1995, the attorney for the Appellant initially requested a continuance for thirty days due to "some suspicions about other property the Smiths may own" and to inquire further into venue. [ROA, Hearing dated September 30, 1995, at 7.] Appellant's attorney noted that Appellant had some questions about Appellees' good faith because Appellees previously filed a Chapter 7 bankruptcy in which Appellees' tax liability was not discharged and Appellees now sought to discharge that debt under Chapter 13. [ROA, Hearing dated September 30, 1995, at 11.] Appellant's attorney stated that she had some concerns about a possessory lien on a truck (based on work being performed on it), some questions regarding $2,400 that Appellees paid to renew a lease on a tract for a mobile home, a question related to transfers by the debtors to their family, payments by a company for a gas bill on Appellees' mobile home, and a question with respect to venue. [ROA, Hearing dated September 30, 1995, at 14–15.] Appellant's attorney introduced no evidence to support any of her statements, but stated that "[t]hese are questions and issues which the United States would like to explore in its objection to confirmation of this plan for lack of good faith." [ROA, Hearing dated September 30, 1995 at 15.]

At a hearing on August 30, 1995, the Bankruptcy Court approved the Plan over the objection of the Appellant. The Court noted that it was familiar with this matter and with the Appellees' circumstances. The Court took judicial notice of the prior bankruptcy filing by Appellees, and noted that it was quite familiar with the Appellees' case and filings because it had handled the previous bankruptcy proceeding. The Court concluded that "a review of the Petition, the Schedules, [and] the Statement of Affairs conclusively show[s] that the debtors have minimal or no assets." [ROA, Hearing dated September 30, 1995 at 18.]

By Order dated September 1, 1995, the Bankruptcy Court confirmed the proposed Chapter 13 Plan. [*See* ROA, Order Confirming Chapter 13 Plan.] The Bankruptcy Court specifically found that "[t]he Plan has been proposed in good faith and not by any means forbidden by law." [*See* ROA, Order Confirming Chapter 13 Plan, ¶ 5.]

In accordance with the Plan, a single payment of $19,620.00 (the payment was a gift to Appellees from Patricia Smith, sister of Finis Smith) was to be made for distribution to the secured and unsecured creditors. The Plan provided for a single payment to debtor's attorney in the amount of $1,160, a single payment of $15,775.37 to the Internal Revenue Service (secured claim of $15,520 plus interest), and the surrender of a 1987 Ford pickup to Bank One and Mick Hickey. In addition, under the Plan, the Internal Revenue Service's unsecured remaining claims (which total $113,387.22) would receive a pro rata distribution of approximately two percent. [*See* ROA, Order Confirming Chapter 13 Plan, dated September 1, 1995.]

## II. STANDARD OF REVIEW

 The Bankruptcy Court's findings of fact are reviewed under the "clearly erroneous" standard. Conclusions of law are reviewed *de novo*. *Bartmann v. Maverick Tube Corp.*, 853 F.2d 1540, 1543 (10th Cir. 1988). "Whether a Chapter 13 plan has been proposed in good faith is a question of fact subject to the clearly erroneous standard of review." *Robinson v. Tenantry*, 987 F.2d 665, 668 (10th Cir.1993). "When reviewing factual findings, an appellate court is not to weigh the evidence or reverse the finding because it would have decided the case differently. A trial court's findings may not be reversed if its perception of the evidence is logical or reasonable in light of the record." *In re Branding Iron Motel, Inc.*, 798 F.2d 396 (10th Cir.1986) (citations omitted).

## III. ANALYSIS: Chapter 13 Good Faith Requirement

Section 1325(a)(3) of the Bankruptcy Code provides that a Chapter 13 plan must be "proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1325(a)(3). The Tenth Circuit in *Flygare v. Boulden*, 709 F.2d 1344 (10th Cir.1983) addressed the Chapter 13 good faith requirement. The Tenth Circuit expressly rejected a *"per se* minimum payment rule," choosing instead to adopt the "factors" previously utilized by the Eighth Circuit in determining good faith. The following factors were listed by the Court as appropriate to use in evaluating the good faith of the debtor:

(1) the amount of the proposed payments and the amount of the debtor's surplus;

(2) the debtor's employment history, ability to earn and likelihood of future increases in income;

(3) the probable or expected duration of the plan;

(4) the accuracy of the plan's statements of the debts, expenses and percentage repayment of unsecured debt and whether any inaccuracies are an attempt to mislead the court;

(5) the extent of preferential treatment between classes of creditors;

(6) the extent to which secured claims are modified;

(7) the type of debt sought to be discharged and whether any such debt is nondischargeable in Chapter 7;

(8) the existence of special circumstances such as inordinate medical expenses;

(9) the frequency with which the debtor has sought relief under the Bankruptcy Reform Act;

(10) the motivation and sincerity of the debtor in seeking Chapter 13 relief; and

(11) the burden which the plan's administration would place upon the trustee.

*Flygare* at 1347–48.

 The record indicates that Appellees are submitting all of their disposable income for three years to the Plan. (*Flygare* factor 1). The Court specifically noted that "a review of the Petition, the Schedules, [and] the Statement of Affairs conclusively show that the debtors have minimal or no assets." (*Flygare* factors 4 & 10). [*See* ROA, Hearing dated September 30, 1995 at 18.] The Plan provides for the payment of all Appellee's secured creditors, and an approximate two percent payment to Appellee's unsecured creditors. (*Flygare* factors 4, 5, & 6). In addition, at the August 30, 1995 hearing the Bankruptcy Court noted that it was familiar with this matter and with the Appellee's circumstances because it had handled Appellee's prior Chapter 7 bankruptcy. (*Flygare* factors 7 & 9). In its September 1, 1995 Order confirming the Chapter 13 Plan, the Bankruptcy Court found that the Plan had been proposed in good faith. [*See* ROA, Order Confirming Chapter 13 Plan, ¶ 5.] Based on a review of the record, the order of the Bankruptcy Court, the hearing on the confirmation, and the schedules and pleadings filed by the parties, this Court finds that the Bankruptcy Court's decision was not clearly erroneous and therefore must be upheld on appeal.

Appellant suggests that the Bankruptcy Court's finding is clearly erroneous because: (1) the $130,516.22 unsecured claim which Appellees seek to discharge in this Chapter 13 was not discharged in a prior Chapter 7 proceeding, (2) this Chapter 13 proceeding

was preceded by a Chapter 7 proceeding, (3) only two percent of Appellant's unsecured claim was being paid under the plan, (4) the debtors were paying $2,400 for a lease in Arizona,[1] and (5) venue was improper.[2] *See* Reply Brief for the Appellant at 5. The Court is unpersuaded by Appellant's arguments.

The fact that the unsecured claim was previously not discharged, that the Appellees had previously filed under Chapter 7, and that Appellant's unsecured claims will receive a two percent pro rata payment does not mean that the Bankruptcy Court's finding that the Plan was filed in good faith is clearly erroneous. The fact of successive filings does not, by itself, constitute bad faith. *See Pioneer Bank of Longmont v. Rasmussen,* 888 F.2d 703 (10th Cir.1989) ("This circuit has rejected a per se bad faith standard, holding instead that bad faith is to be judged by the totality of the circumstances on a case by case basis."). In addition, the Bankruptcy Court presided over the prior Chapter 7 filing, and consequently was aware of the details related to the discharge/non-discharge of Appellees' debts in that prior proceeding. Furthermore, as outlined above, the record does contain evidence to support the conclusion of the Bankruptcy Court that the Plan was submitted in good faith.

Appellant asserts that *Pioneer Bank of Longmont v. Rasmussen,* 888 F.2d 703

(1989), is "nearly identical" to this case and requires a finding that the Plan was presented in bad faith. In *Pioneer Bank* the Tenth Circuit did conclude that based on the totality of the circumstances the proposed plan in that case was not made in good faith. The debtor in *Pioneer Bank* had previously discharged his unsecured debts in a Chapter 7 proceeding. However, the bankruptcy court had disallowed the debt owed to Pioneer (in the Chapter 7 proceeding) because the debtor provided fraudulent loan information to obtain the loan. Twelve days after the Chapter 7 proceeding concluded, the debtor initiated a Chapter 13 proceeding listing the debt to Pioneer as the only obligation, and proposing a plan which would pay less than 1.5% of the value of the debt. The court noted that "[w]e reach this conclusion because the Chapter 13 filing was a manipulation of the bankruptcy system in order to discharge a single debt for de minimis payments under a Chapter 13 plan which was ruled not dischargeable under an immediately previous Chapter 7 filing, when the debtor could not originally meet the jurisdictional requirements of Chapter 13." *Pioneer Bank* at 705.

The facts from *Pioneer Bank* are in sharp contrast to the facts of this case. Nothing indicates that the debts which Appellees now seek to discharge under Chapter 13 were procured through fraud.[3] The Appellees'

---

**1.** The record contains no evidence to support Appellant's argument. Appellant's attorney merely represented to the bankruptcy court that Appellant had some questions with respect to the purchase of land in Arizona and wanted additional time to investigate. A statement that one has some questions and wants to investigate does not constitute evidence. Because no evidence has been submitted to this Court in the Record on Appeal, the Court cannot give any weight to Appellant's argument on this point.

**2.** Again, the record contains no evidence to support Appellant's "suspicions" with respect to venue. The Court cannot examine a claim that is not supported or substantiated in the record. *See, e.g., Rubner & Kutner, P.C. v. U.S. Trustee,* 997 F.2d 1321 (10th Cir.1993) ("It is counsel's responsibility to see that the record excerpts are sufficient for consideration and determination of the issues on appeal and the court is under no obligation to remedy any failure of counsel to fulfill that responsibility. Without the record before us, we cannot review the bankruptcy court's

factual findings and must accept them as true.") (citations omitted).

**3.** *See, e.g., Pioneer Bank,* 888 F.2d at 705 ("Although the discharge of an obligation which would be nondischargeable in Chapter 7 is not, standing alone, a sufficient basis on which to find bad faith or deny confirmation, it is a relevant factor to be considered in the § 1325(a)(3) good faith inquiry. Resort to the more liberal discharge provisions of Chapter 13, though lawful in itself, may well signal an 'abuse of the provisions, purpose, or spirit' of the Act, *especially where a major portion of the claims sought to be discharged arises out of pre-petition fraud or other wrongful conduct* and the debtor proposes only minimal repayment of these claims under the plan. Similarly, a Chapter 13 plan may be confirmed despite even the most egregious pre-filing conduct where other factors suggest that the plan nevertheless represents a good faith effort by the debtor to satisfy his creditors' claims.") quoting *In re Neufeld,* 794 F.2d 149, 152–153 (4th Cir. 1986) (emphasis added).

Plan provides for the payment of all of their secured debt. In addition, the Bankruptcy Court, which also handled the previous Chapter 7 case,[4] determined that Appellees were *not* filing with the intention of manipulating the system. The Court cannot agree with Appellant that *Pioneer Bank* dictates a finding that the Bankruptcy Court's confirmation of the Plan in this case was clearly erroneous.

Court failed to meet its duty, and that such a failure led to a clearly erroneous decision. Appellant relies on *In re Nittler*, 67 B.R. 217 (D.Kan.1986).

In *Nittler* the court did note that the issue of good faith "requires an inquiry into … the conduct of the debtor." *Nittler*, 67 B.R. at 220. The court reversed the finding of the bankruptcy court that the debtor's filing was in good faith because, based on the facts of the case, "sufficient evidence was presented to the bankruptcy court on these three [*Flygare*] factors to warrant a much broader inquiry into good faith." *Nittler* at 222. However, as in *Pioneer Bank*, the evidence presented to the court in *Nittler* indicated that the debtor's conduct was questionable.[5] Nothing in this record indicates that Appellee engaged in any type of similar conduct. At most, Appellant seems to accuse Appellee of filing successive petitions and paying a small amount on an unsecured claim. However, as noted above, the determination of good faith under Chapter 13 is based on the "totality of the circumstances." Under the facts of this case the Court cannot conclude that the Bankruptcy Court's determination that Appellee was acting in good faith is clearly erroneous.

Accordingly, the decision of the Bankruptcy Court is *AFFIRMED*.

---

**4.** The Bankruptcy Court noted that the previous Chapter 7 discharge was entered in February 95, and that the current Chapter 13 proceeding was filed in July 1995. [ROA, Hearing dated September 30, 1995 at 17.]

**5.** Among other things, the *Nittler* court noted that, with respect to one debt, the debtor had knowingly misrepresented that he owned certain property, had improperly identified property which he did not own as his own, and had produced false records that indicated his ownership of the property.