**In re F. Arthur YOUNG, also known as F.A. Young, also known as Francis Arthur Young III, also known as Terry Young, Debtor.**

**Ronald K. Mason, Appellant,**

**v.**

**Francis Arthur Young, III, and Ann Spears, Trustee, Appellees.**

**BAP Nos. WO–98–029, WO–98–094. Bankruptcy No. 97–13747.**

United States Bankruptcy Appellate Panel of the Tenth Circuit.

Aug. 25, 1999.

**794**

Joseph R. Weeks of the Oklahoma City University School of Law, Oklahoma City, Oklahoma, for Appellant.

Lesli Bailey Peterson of Bellingham, Collins & Loyd, P.C., Oklahoma City, Oklahoma, for Appellee.

Before McFEELEY, Chief Judge, BOULDEN, and MATHESON, Bankruptcy Judges.

OPINION

McFEELEY, Chief Judge.

Ronald K. Mason ("Mason"), an unsecured creditor of Francis Arthur Young, III ("Young"), appeals two orders of the United States Bankruptcy Court for the Western District of Oklahoma ("bankruptcy court"). We consolidate these two appeals for the purpose of this decision.

1. Young filed a petition under Chapter 7, received a discharge, and then obtained an or-

First, Mason appeals the bankruptcy court's Order on Confirmation of Amended Chapter 13 Plan ("Confirmation Order"). Mason alleges that the bankruptcy court erroneously confirmed Young's Second Amended Chapter 13 Plan for the following reasons: 1) Young cannot receive two discharges in the same case;[1] 2) Young did not propose his plan in good faith; and 3) Young is not devoting all of his disposable income to the plan. We find that the first issue, whether Young may receive two discharges in the same case, is a collateral attack on the bankruptcy court's earlier Order Converting Case to Chapter 13 ("Conversion Order"); it is not, in substance, an appeal of the bankruptcy court's Confirmation Order. Because the Conversion Order was not timely appealed, we hold that the first issue is not properly before this court. The latter two issues are factual findings that are supported by the record.

Second, Mason appeals the bankruptcy court's Order Denying Motion for New Trial in which he sought an order vacating the Confirmation Order and granting a new trial on confirmation of Young's Second Amended Chapter 13 Plan. We hold that 11 U.S.C. § 1330 limits motions for revocation of a confirmation order solely to motions based on fraud and must be brought within the 180-day period delineated in the statute.

We affirm both orders.

I. *Appellate Jurisdiction*

Initially, we must determine whether we have jurisdiction to consider the merits of this appeal. *Semtner v. Group Health Serv.,* 129 F.3d 1390, 1392 (10th Cir.1997). The question of whether an appellate court has jurisdiction over an appeal is a question of law and is subject to *de novo* review. *Weston v. Mann (In re Weston),* 18 F.3d 860, 862 (10th Cir.1994). In the first appeal before us, Mason is attempting to appeal two separate orders

der converting his case to one under Chapter 13.

of the bankruptcy court: the Conversion Order and the Confirmation Order. The first issue presented is whether Young may receive two discharges in the same case.[2] Mason asks this Court to overturn the bankruptcy court's Conversion Order.

■ This issue is not properly before this Court. Although Mason frames his argument by questioning whether Young may receive two discharges in the same case, in substance, he is making a collateral attack on the bankruptcy court's Conversion Order, which permitted Young's conversion of his Chapter 7 case to a Chapter 13 case. It is a collateral attack since the relief requested is a reversal of the Conversion Order. The issue of whether a case is properly converted should be appealed within ten days of the entry of a bankruptcy court's order. Fed. R. Bankr.P. 8002; *Vista Foods U.S.A., Inc. v. Unsecured Creditors' Comm. (In re Vista Foods U.S.A., Inc.)*, 202 B.R. 499 (10th Cir. BAP 1996) (per curiam) (holding that a court order converting a debtor's Chapter 11 case to a Chapter 7 case was a final order for purposes of appeal). An absolute prerequisite to appellate jurisdiction is the timely filing of a notice of appeal. *Parker v. Board of Public Utils.*, 77 F.3d 1289 (10th Cir.1996). The untimely filing of a notice of appeal is a jurisdictional defect that will deprive an appellate court of jurisdiction to review an order of the bankruptcy court. *Deyhimy v. Rupp (In re Herwit)*, 970 F.2d 709, 710 (10th Cir.1992). Mason did not timely appeal the final order converting the Chapter 7 case to a Chapter 13 case. Fed. R. Bankr.P. 8002. This court does not have jurisdiction to grant the relief requested, since there was no timely appeal. Therefore, we cannot consider this issue.

The Bankruptcy Appellate Panel has jurisdiction over the remaining issues in the first appeal and the issues in the second appeal. The bankruptcy court's Confirmation Order and the Order Denying Motion for New Trial are final orders subject to appeal under 28 U.S.C. § 158(a)(1). Mason filed timely notices of appeal under Fed. R. Bankr.P. 8002. The parties consented to this Court's jurisdiction by not electing to have the appeals heard by the United States District Court for the Western District of Oklahoma. 28 U.S.C. § 158(c)(1); Fed. R. Bankr.P. 8001; 10th Cir. BAP L.R. 8001–1.

## II. *Standard of Review*

■ "For purposes of standard of review, decisions by judges are traditionally divided into three categories, denominated questions of law (reviewable *de novo*), questions of fact (reviewable for clear error), and matters of discretion (reviewable for 'abuse of discretion')." *Pierce v. Underwood*, 487 U.S. 552, 558, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988); *see* Fed. R. Bankr.P. 8013; *Fowler Bros. v. Young (In re Young)*, 91 F.3d 1367, 1370 (10th Cir. 1996).

■ Whether a Chapter 13 plan has been proposed in good faith is a factual question that is subject to the clearly erroneous standard of review. *Robinson v. Tenantry (In re Robinson )*, 987 F.2d 665, 668 (10th Cir.1993). A determination of what constitutes a debtor's projected dis-

---

**2.** Mason argues that the bankruptcy court erroneously confirmed Young's Second Amended Chapter 13 Plan because Young may not receive two discharges in the same case under different sections of the Code. Mason argues that once Young received a Chapter 7 discharge, he could not convert the case to Chapter 13, but had to file a separate case. Alternatively, Mason contends that the case was not properly before the bankruptcy court because Young did not pay two filing fees. *See* 28 U.S.C. § 1930. Basically, Mason's second argument is that if a debtor files under Chapter 7 and then converts to Chapter 13 before discharge, the debtor does not have to pay another fee since he or she has not yet received relief in the Chapter 7 case. However, if the debtor receives a discharge in the Chapter 7 and then converts to Chapter 13, the debtor must pay another fee because he or she has received relief in the Chapter 7 case, and the conversion has the effect of initiating a new case.

posable income for a three-year period is also a factual question. Findings of fact are clearly erroneous only when the reviewing court is left with "the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948).

Questions of statutory interpretation are questions of law and are reviewable *de novo*. *Dalton v. Internal Revenue Service*, 77 F.3d 1297, 1299 (10th Cir.1996). Whether § 1330 limits motions for revocation of a confirmation order to motions brought within 180 days after entry of an order of confirmation based only on fraud is a question of statutory interpretation and is subject to *de novo* review.

### III. *Background*

The debt owed Mason consists of a judgment of $300,000 in punitive damages: $150,000 for violating Mason's civil rights, and $150,000 for wrongful discharge. The judgment resulted from a suit brought by Mason against the Oklahoma Turnpike Authority ("Authority") and a number of officers and members of that Authority, including Young.[3] In that suit, Mason was also awarded judgment against the Authority for actual damages and a judgment against defendant Sam Scott ("Scott"), an officer of the Authority, for punitive damages in the amount of $400,000. The district court found that the punitive damage judgments in favor of Mason were duplicative and ordered him to elect one of the awards. Subsequently, the Tenth Circuit reversed the district court, which reinstated both jury awards.

Young filed for Chapter 7 relief on April 18, 1997. On April 30, 1997, Mason filed an adversary complaint, claiming that the debt Young owed him was nondischargeable under 11 U.S.C. § 523(a)(6).[4] Young subsequently received a discharge of all other dischargeable debts. On September 9, 1997, Young moved to convert the Chapter 7 case to a case under Chapter 13. Mason, whose adversary proceeding was still pending, opposed the conversion, claiming that the conversion was in bad faith. Mason argued that Young's motion to convert demonstrated bad faith because Young filed it on the same day that the Tenth Circuit remanded Mason's appeal on the issue of punitive damages to the district court. Mason contended that if both punitive damage claims had been in place at the time of filing, Young would not have met the Chapter 13 debt limitations found in § 109(e). After a hearing, the bankruptcy court found that Young had an absolute right to convert and entered the Conversion Order, which Mason did not appeal.

Young filed his first Chapter 13 plan on December 9, 1997 ("Original Plan"). The thirty-six-month plan provided for the following:

(1) payment of all administrative claims entitled to priority according to local procedure;

(2) payment of nondischargeable priority tax claims of the IRS and the Oklahoma Tax Commission;

(3) payment of a secured claim as an ongoing debt on a 1992 Cadillac;

(4) surrender of all real property; and

(5) payment to unsecured creditors on unsecured nonpriority claims as funds are available.

The only unsecured creditor treated in the Original Plan was Mason. He opposed confirmation of the Original Plan and requested dismissal of the case. On February 18, 1998, the bankruptcy court entered an Order on Objection to Confirmation of Chapter 13 Plan and on Motion to Dismiss Petition ("Order I") denying confirmation of the Original Plan. The bankruptcy court cited *Flygare v. Boulden*, 709 F.2d 1344 (10th Cir.1983), and found that Young's

---

**3.** *See Mason v. Oklahoma Turnpike Auth.*, 115 F.3d 1442 (10th Cir.1997).

**4.** Future references are to Title 11 of the United States Code unless otherwise noted.

Original Plan failed to meet the good faith test elaborated in *Flygare* since the Original Plan failed to meet the following four *Flygare* factors: the length of the plan; the type of debt to be discharged and whether the debt would be nondischargeable under Chapter 7; the frequency with which Young had sought relief under the Bankruptcy Reform Act; and the motivation and sincerity of Young in seeking Chapter 13 relief. In Order I the bankruptcy court also discussed whether a debtor could receive two discharges in the same case and held that such relief was appropriate.[5] The bankruptcy court gave Young leave to file an amended plan within ten days of the filing of Order I.

On February 25, 1998, Young filed a Second Amended Chapter 13 Plan ("Second Plan") which increased the length of the plan from thirty-six months to sixty months. The Second Plan would pay approximately 4% of Mason's claim. All remaining provisions were identical to those contained in the Original Plan.[6] On April 28, 1998, the bankruptcy court entered the Confirmation Order. The bankruptcy court found that the increase in the Second Plan's length resolved any issue of whether the Second Plan had been proposed in good faith. The Confirmation Order incorporated the findings of Order I. On May 4, 1998, Mason filed this appeal from the Confirmation Order (No. WO–98–029).

Subsequent to the appeal of the Confirmation Order, on June 3, 1998, the Oklahoma legislature enacted legislation which permitted state agencies to indemnify officers and managers for punitive damage awards. Pursuant to this legislation, the Authority indemnified Scott for the full amount of the award against him, including interest. Mason filed a motion with this Court, asking for a remand to the bankruptcy court for discovery and an evidentiary hearing on the ground that the changed circumstances brought about by Oklahoma's new willingness to indemnify its officers and managers for punitive damage awards was evidence that Young no longer needed bankruptcy protection. On November 5, 1998, this Court denied that motion, on the basis that a party who seeks Fed.R.Civ.P. 60(b)(2) relief must first proceed before the trial court. Mason then filed a Motion for New Trial ("Motion") with the bankruptcy court, requesting that the bankruptcy court vacate the Confirmation Order and grant a new trial of the issue of confirmation of Young's Second Plan. The bankruptcy court denied the Motion on the grounds that it was untimely under § 1330(a). Mason appealed that order (No. WO–98–094).

## IV. *Discussion*

### A. The Confirmation of the Second Plan

The first issue presented for our review is whether the bankruptcy court erroneously confirmed Young's Second Plan.

■ A bankruptcy court must confirm a Chapter 13 plan if the plan meets each of the six requirements set forth in § 1325(a) and the debtor proposes payments which meet the requirements of § 1325(b). Mason contends that the bankruptcy court erroneously confirmed Young's Second Plan because the Second Plan fails to comply with subsections (a) and (b) of § 1325. First, Mason argues that Young's Second Plan does not meet the good faith requirement of § 1325(a)(3). Second, he argues that Young's Second Plan must fail because he is not devoting all of his disposable income to repayment of creditors as required under § 1325(b)(1)(B).

---

**5.** We stress that this issue is not properly before us, and that nothing we decide today either approves or disapproves of this determination.

**6.** Young's Second Plan was orally amended at the confirmation hearing to provide for an automatic increase in monthly payments to unsecured creditors if Young's disposable income increased, and to contribute any tax refunds to which Young may become entitled beginning in 1997. Appellee's appendix, at p. 52.

### 1. § 1325(a)(3)

One of the most disputed requirements of confirmation under § 1325(a) is subsection (3), which provides that a plan must be "proposed in good faith and not by any means forbidden by law." The debtor has the burden of proving good faith. *Hardin v. Caldwell (In re Caldwell)*, 895 F.2d 1123, 1126 (6th Cir. 1990). The good faith analysis is made on a case-by-case basis and should take a 'totality of the circumstances' approach. *Flygare*, 709 F.2d at 1347; *see also Gier v. Farmers State Bank*, 986 F.2d 1326, 1328 (10th Cir.1993). In *Flygare* the Tenth Circuit adopted a non-exhaustive list of eleven relevant factors to guide courts in their determination of good faith. *Flygare*, 709 F.2d at 1347–48 (quoting *Estus*, 695 F.2d at 316–18).[7] The bankruptcy court should weigh each factor according to the facts and the circumstances of each case. *Flygare*, 709 F.2d at 1348. The bankruptcy court may consider other relevant circumstances, including any that may indicate the debtor has " 'unfairly manipulated the Bankruptcy Code.' " *Pioneer Bank v. Rasmussen (In re Rasmussen)*, 888 F.2d 703, 704 n. 3 (10th Cir.1989) (quoting *Education Assistance Corp. v. Zellner*, 827 F.2d 1222, 1227 (8th Cir.1987)).

Mason asserts that Young did not propose his Second Plan in good faith. First, he argues that this court should find that the Second Plan is *per se* proposed in bad faith because Young's Original Plan was for three years instead of five. Second,

Mason contends that the Second Plan is proposed in bad faith since his claim arose out of a punitive damages judgment and will be discharged after a *de minimis* payment.

The first part of this argument is not supported by the law. With this argument, Mason urges the court to adopt a standard that establishes bad faith whenever a debtor files a three-year plan instead of a five-year plan. This we cannot do. As stated above, a debtor's good faith is evaluated under a 'totality of the circumstances' test. A single factor alone is not enough to establish bad faith. The Code does not require that a debtor file a five-year plan if he cannot pay off all of his debt with a three-year plan. While the filing of the Original Plan with a three-year term may be some circumstantial evidence that Young proceeded in bad faith, it is only one factor that must be considered together with all the other evidence presented to the bankruptcy court. The bankruptcy court denied confirmation of the Original Plan, basically suggesting that Young file a five-year plan, which he did. As the finder of fact, the bankruptcy court had the opportunity to weigh Young's credibility, motivation, and sincerity in filing the Second Plan. The bankruptcy court found good faith. When a bankruptcy court makes findings of fact based on the credibility of a witness, a reviewing court must pay greater deference to the trial court's findings. *Dalton v. Internal*

---

7. These factors are as follows:

"(1) the amount of the proposed payments and the amount of the debtor's surplus;

(2) the debtor's employment history, ability to earn and likelihood of future increases in income;

(3) the probable or expected duration of the plan;

(4) the accuracy of the plan's statements of the debts, expenses and percentage repayment of unsecured debt and whether any inaccuracies are an attempt to mislead the court;

(5) the extent of preferential treatment between classes of creditors;

(6) the extent to which secured claims are modified;

(7) the type of debt sought to be discharged and whether any such debt is non-dischargeable in Chapter 7;

(8) the existence of special circumstances such as inordinate medical expenses;

(9) the frequency with which the debtor has sought relief under the Bankruptcy Reform Act;

(10) the motivation and sincerity of the debtor in seeking Chapter 13 relief; and

(11) the burden which the plan's administration would place upon the trustee."

*Flygare*, 709 F.2d at 1347–48 (quoting *Estus*, 695 F.2d at 317).

*Revenue Service,* 77 F.3d 1297, 1302 (10th Cir.1996) (citing *Anderson v. Bessemer City,* 470 U.S. 564, 575, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985)). After reviewing the record, we conclude that the bankruptcy court's finding of good faith is supported by the record and it is not clearly erroneous.

Mason's second argument, that Young's Second Plan was proposed in bad faith as it discharges a punitive damages debt after *de minimis* payment, finds support in Tenth Circuit case law. In *Rasmussen,* a debtor with debts of $100,000 filed for Chapter 7 relief. All of his unsecured debt was discharged except for $40,000, which was found nondischargeable under § 523(a)(2). Within two weeks of the conclusion of his Chapter 7 case, the debtor filed a Chapter 13 petition. The only debt listed in that case was the $40,000 nondischargeable debt. Under the proposed Chapter 13 plan, the creditor would have received approximately 1.5% of its claim over a three-year period. The court applied the *Flygare* factors and noted that it was not *per se* bad faith to file successive petitions. However, the debtor had abused the bankruptcy process because

> the Chapter 13 filing was a manipulation of the bankruptcy system in order to discharge a single debt for *de minimis* payments under a Chapter 13 plan which was ruled not dischargeable under an immediately previous Chapter 7 filing, when the debtor could not originally meet the jurisdictional requirements of Chapter 13.

*Rasmussen,* 888 F.2d at 706.

▮▮▮ Initially, we note that an attempt to discharge a debt in a Chapter 13 case that is not dischargeable in a Chapter 7 is not *per se* bad faith unless combined with other factors that show an overall effort to avoid paying creditors. *Id.; Caldwell,* 895 F.2d at 1127. The test for good faith remains a 'totality of the circumstances' approach. Under this approach, this case is dissimilar from *Rasmussen* in certain crucial aspects. First, unlike the debtor in *Rasmussen* who did not file a Chapter 13 because his debts exceeded the statutory limits, the bankruptcy court found that Young originally filed for Chapter 7 because he did not have employment with sufficient compensation to allow him to fund a feasible Chapter 13 plan. Once Young acquired a higher paying job, he converted to Chapter 13. Second, the bankruptcy court found Young credible. Third, the bankruptcy court found that the other *Flygare* factors were met and supported by the record. While it is true that Young's Second Plan essentially discharges almost all of the debt owed to Mason after a modest payment, this factor alone does not warrant reversing the bankruptcy court's order.[8] Under the 'totality of the circumstances' approach, the bankruptcy court's findings were not clearly erroneous.

### 2. § 1325(b)(1)(B)

Under section 1325(b)(1)(B) a bankruptcy court may confirm a plan only if "the plan provides that all of the debtor's projected disposable income to be received in the three-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan." The bankruptcy court found that this element was met and confirmed the Second Plan.

▮▮▮ Mason argues that this element was not met. He maintains that Young is not devoting all of his disposable income to

---

**8.** The bankruptcy court found that while Young's debt to Mason arose out of tortious conduct,

> [a] debtor who has sought the protections of bankruptcy, and who meets the obligations of § 1325(a) for confirmation of a plan over the maximum term permitted by law, need not be turned away and forced to sell apples on the street in every case in order to satisfy an impossibly large unsecured obligation, however egregious may have been the conduct which gave rise to the obligation.

Confirmation Order, at p. 6 (citing *Neufeld v. Freeman,* 794 F.2d 149 (4th Cir.1986)).

the Second Plan for the following reasons: 1) Young could earn more money in the future since he has earned more money in the past; 2) Young's expenses as reflected on his schedule between the filing of his Original Plan and his Second Plan significantly increased, and this increase demonstrates that he is manipulating his expenses to avoid paying into the Second Plan; 3) Young purchased a Cadillac from his brother-in-law which transaction was preferential, and the payments are a form of savings; and 4) Young concealed his interest in rental properties.[9]

All four arguments were addressed and dismissed by the bankruptcy court. With regard to the first argument, the bankruptcy court found that Young's past positions, first as an elected official and then as an appointed one, were public positions and, as such, did not particularly qualify him for any jobs he might find in the nonpublic sector. Additionally, the bankruptcy court pointed out that if Young's income did increase, Mason could move to have the Second Plan modified. The bankruptcy court resolved Mason's second argument by finding that Young's expenses had increased and that this increase was reasonable given the requirements of Young's new job. The bankruptcy court dismissed Mason's third argument when it found that the Cadillac was purchased in an arm's length transaction that was not preferential. Finally, the bankruptcy court found that Young had not concealed his interest in rental properties.

The record supports the bankruptcy court's findings. We do not find them clearly erroneous.

## B. Order Denying Motion for New Trial

The next issue presented for our review is whether the bankruptcy court properly denied Mason's Motion for New Trial as untimely. This issue involves the interaction of Bankruptcy Rule 9024 and Federal Rule of Civil Procedure 60(b) and § 1330 of the Bankruptcy Code.

Bankruptcy Rule 9024 provides: "Rule 60 F.R.Civ.P. applies in cases under the Code except that ... (3) a complaint to revoke an order confirming a plan may be filed only within the time limit allowed by § 1144, § 1230 or § 1330."

Federal Rule of Civil Procedure 60(b) provides:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: ... (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud.... The motion shall be made ... for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken.

Bankruptcy Code section 1330(a) provides: "On request of a party in interest at any time within 180 days after the date of ... an order of confirmation ..., the court may revoke such order if such order was procured by fraud."

The bankruptcy court found that § 1330(a) governed the disposition of Mason's Motion and applied its time limit of 180 days. The bankruptcy court held that because the Confirmation Order was filed on April 28, 1998, and Mason filed his Motion on November 17, 1998, 203 days later, the Motion was untimely.

Mason argues that § 1330(a) is a time limitation only on motions for revocation of

---

9. Mason also argues that the bankruptcy court exceeded its authority when it found that discharge of Mason's debt was appropriate since Mason could never reasonably be expected to pay the debt. Mason asserts that when the Tenth Circuit and the district court allowed the punitive damage award, both courts implicitly found that Young had the ability to pay. It appears that Mason is making a judicial estoppel or a collateral estoppel argument. However, this argument was not presented before the bankruptcy court, and we decline to address it here.

confirmation of a Chapter 13 plan due to fraud, and that motions for revocation of a Chapter 13 plan brought under Fed. R.Civ.P. 60(b) ("60(b)") may be based on other grounds specified in that rule. He contends that if a 60(b) motion is brought on grounds other than fraud, then the motion is subject to 60(b)'s one-year time limit. For this reason, Mason asserts that his 60(b) Motion based on newly discovered evidence was timely as it was within the one-year limit. However Mason couches the terms of his Motion, this Motion is in fact a request to vacate or revoke the Confirmation Order, and therefore is governed by § 1330.

Whether § 1330 is both a substantive and time limitation on a motion to revoke a confirmation order is an issue of first impression in the Tenth Circuit.

The Third Circuit visited this issue in *Branchburg Plaza Associates, L.P. v. Fesq (In re Fesq)*, 153 F.3d 113 (3d Cir.1998), *cert. denied,* —— U.S. ——, 119 S.Ct. 1253, 143 L.Ed.2d 350 (1999). In *Fesq* a secured creditor wanted to vacate a Chapter 13 confirmation order because the debtor's plan did not pay the full amount of the creditor's secured claim. The creditor did not file a timely objection to the plan. When the creditor discovered that the Chapter 13 plan had been confirmed, he filed a motion to vacate the confirmation order. As the basis for this motion, the creditor alleged inadvertence, excusable neglect, or mistake under 60(b). Specifically, the attorney for the creditor claimed that because of a computer glitch in his office, he had missed the date for filing objections to the plan. The attorney argued that § 1330(a) functions only to provide a time limitation on those motions for revocation based on fraud, and that other motions may be based on any ground delineated in 60(b).

The Third Circuit held that § 1330 provides the complete substantive basis for revocation of Chapter 13 confirmation orders. *Fesq,* 153 F.3d at 120. *Fesq* found that the language of the statute,[10] the context and the background of the Bankruptcy Amendments and Federal Judgeship Act of 1984 as it relates to § 1144, the parallel statutory limitations in Chapters 11 and 12,[11] the case law,[12] and the policy of finality behind the Bankruptcy Code indicated that Congress intended § 1330 to limit all motions for revocation of a confirmation order to those based on fraud.[13]

---

10. *Fesq* found that the final phrase in § 1330(a), "if such order was procured by fraud," indicates that Congress' intent in this statute was to limit the grounds for relief. The Third Circuit reasoned that if Congress merely wanted to create a time limitation for motions based on fraud, it could have done this in § 1330 without the above phrase. *Fesq,* 153 F.3d at 115–16.

11. *See* §§ 1144, 1230(a).

12. *See, e.g., United States v. Hochman (In re Hochman),* 853 F.2d 1547 (11th Cir.1988) (affirming per curiam the district court which held that § 1330(a) was both a time and substantive limitation on revocation); *Lester Mobile Home Sales, Inc. v. Woods (In re Woods),* 130 B.R. 204, 205 (W.D.Va.1990); *United States v. Trembath (In re Trembath ),* 205 B.R. 909, 915 (Bankr.N.D.Ill.1997); *Rakestraw v. Hood (In re Hood),* 211 B.R. 334, 335 (Bankr. W.D.Ark.1997); *Laurel Fed. Credit Union v. Hoppel (In re Hoppel),* 203 B.R. 730, 732 (Bankr.D.Mont.1997); *In re Klus,* 173 B.R. 51 (Bankr.D.Conn.1994); *In re Duke,* 153 B.R.

913, 919 (Bankr.N.D.Ala.1993); *In re Walker,* 114 B.R. 847, 851 (Bankr.N.D.N.Y.1990). *Cf. In re Pence,* 905 F.2d 1107 (7th Cir.1990) (finding that per § 1330(a) fraud is the only basis for revocation of confirmation). *But see In re Burgess,* 138 B.R. 56 (Bankr.W.D.Wis. 1991) (holding that a confirmation order could be revoked per 60(b)).

13. One judge in the three-judge panel dissented on the basis that § 1330(a) is merely a time limitation and not a substantive limitation. *Fesq,* 153 F.3d at 120 (Stapleton, J., dissenting). Judge Stapleton argued that the policy behind 60(b) and Fed. R. Bankr.P. 9024–to provide relief from a miscarriage of justice-dictated that § 1330(a) be read only as a time limitation. *Id.* He discounted the majority's position by maintaining that the plain language of the provision dictates this finding. *Id.* at 121. He based this conclusion on a reading of a parallel provision, § 1144. *Id.* at 121 n. 11. Section 1144 specifically limits motions for revocation to fraud "if and only if such order was procured by fraud."

*Id.* Accordingly, they held that all such motions must be made within 180 days. *Id.*

*Fesq* came to the conclusion that § 1330 should be read as both a time and a substantive limitation on all motions for revocation of confirmed Chapter 13 plans. When a party brings a motion under 60(b), the party is basically requesting revocation of the confirmed plan. When the relief sought is revocation of a confirmed Chapter 13 plan, then § 1330 is both a substantive limitation and a time limitation. The plain language of both § 1330 and Rule 9024 indicate that motions for revocation of a confirmed Chapter 13 plan must be grounded in allegations of fraud and brought within 180 days.

■ Mason bases his argument opposing this interpretation on his reading of Rule 9024. He argues that Rule 9024's purpose is to foreclose a party seeking revocation of a confirmation order based on fraud from taking advantage of the one-year period provided for in 60(b). According to Mason, Rule 9024 is also meant to provide an avenue into the Bankruptcy Code for all the grounds for relief provided

in 60(b). However, this argument is undercut, as *Fesq* noted, by the fact that Rule 9024 was promulgated solely to give effect to the substantive provisions of the Bankruptcy Code. *Fesq,* 153 F.3d at 116. The Bankruptcy Code defines substantive rights, while the Bankruptcy Rules delineate the process for protecting those rights.[14] Rule 9024 cannot grant a substantive right foreclosed by § 1330(a). *Id.*

■ Other sections of the Code also reinforce this reading of § 1330. The most important section for our purposes is § 1329, which provides for modification of a Chapter 13 plan.[15] A plan may be modified so as to increase or decrease the payments on claims of a particular class, and a court may consider a significant change in circumstances in determining whether or not to grant the modification. *In re Klus,* 173 B.R. 51, 58–59 (Bankr. D.Conn.1994); *In re Powers,* 140 B.R. 476, 479 (Bankr.N.D.Ill.1992). This section effectively addresses reconsidering confirmation due to new evidence. Importing 60(b) motions for relief based on new evidence via Rule 9024 would be redundant.[16]

The judge argued that the absence of the restrictive clause "if and only" in § 1330(a) indicates that it was not meant to be so limited. *Id.*

The majority addressed the language differences between §§ 1144 and 1330(a). They found that the different language was probably the result of a technical glitch. *Id.* at 118. The glitch occurred, they speculated, because of a bankruptcy court opinion released at the same time that the 1984 legislation was written. *Id.* That opinion held that fraud was a nonexclusive basis for revoking Chapter 11 confirmation orders. *Id.* There were no similar opinions with regard to Chapter 12 and 13 cases. *Id.* The majority concluded that the failure to put similar language in the Chapter 12 and 13 provisions was probably a mere oversight and that there was enough other evidence to support their interpretation of § 1330. *Id.*

14. See 28 U.S.C. § 2075, which provides: "The Supreme Court shall have the power to prescribe by general rules, the forms of process, writs, pleadings, and motions, and the practice and procedure in cases under Title 11. Such rules shall not abridge, enlarge, or

modify any substantive right." *See also Fesq,* 153 F.3d at 116 (quoting *In re Hanover Indus. Mach. Co.,* 61 B.R. 551, 552 (Bankr.E.D.Pa. 1986)).

15. Section 1329(a) provides:

At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecure claim, to—

(1) increase or reduce the amount of payments on claims of a particular class provided for by the plan:

(2) extend or reduce the time for such payments; or

(3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan.

16. Rule 60(b) also provides for relief on other grounds; however, the policy behind the Code as well as various of its other substantive provision support the restriction of motions for revocation to fraud only.

More importantly, the policy behind the Bankruptcy Code—finality, a fresh start, and prompt administration of each case—supports reading § 1330 as both a time and a substantive restriction.[17] We hold that section § 1330 provides the complete substantive basis for all motions for revocation of confirmed Chapter 13 plans.

## V. Conclusion

For the reasons set forth above, the bankruptcy court's Order on Confirmation of Amended Chapter 13. Plan and the bankruptcy court's Order Denying Motion for New Trial are AFFIRMED.

---

**17.** *See Andersen v. UNIPAC–NEBHELP (In re Andersen),* 179 F.3d 1253 (10th Cir.1999) (finding that there is a strong policy of finality in confirmed Chapter 13 plans). See also the Committee Note to Rule 8002, which states that "[t]he time to appeal … is 10 days, rather than 30 days provided for in the civil practice. The shortened time is specified in order to obtain prompt appellate review, often important in the administration of a case under the Code."