**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 16 2001**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

In re: F. ARTHUR YOUNG, also
known as F.A. Young, also known as
Francis Arthur Young, III, also known
as Terry Young, Debtor.

---

RONALD MASON,

     Appellant,

v.

FRANCIS ARTHUR YOUNG, III;
ANN SPEARS, Trustee,

     Appellees.

No. 99-6355

---

**Appeal from the Bankruptcy Appellate Panel**
**for the Tenth Circuit**
**(BAP No. WO-98-29)**

---

Joseph R. Weeks, Oklahoma City, Oklahoma for the Appellant.

Lesli Bailey Peterson, Bellingham, Collins & Loyd, P.C., Oklahoma City,
Oklahoma for the Appellee.

---

Before **EBEL**, **McKAY** and **LUCERO**, Circuit Judges.

---

**LUCERO**, Circuit Judge.

---

This case is on appeal from the Tenth Circuit Bankruptcy Appellate Panel ("BAP"). We consider first whether the BAP erred in determining that a conversion from Chapter 7 to Chapter 13—before a Chapter 13 plan was approved—was a final, immediately appealable order such that an appeal subsequent to approval of the Chapter 13 plan is untimely. Determining that the appeal is timely, we inquire into whether the bankruptcy court erred as a matter of law in allowing a conversion to Chapter 13 after discharge was obtained under Chapter 7, and whether the bankruptcy court erred in determining that the Chapter 13 plan at issue was proposed in good faith pursuant to 11 U.S.C. § 1325(a)(3). Exercising jurisdiction pursuant to 28 U.S.C. § 158(d), we affirm, but for different reasons than those articulated by the BAP.

# I

The procedural background of this case before it reached the bankruptcy court is lengthy. See Mason v. Oklahoma Tpk. Auth., 182 F.3d 1212, 1213 (10th Cir. 1999) (describing the procedural history of the underlying lawsuit in federal district court and on appeal in this Court). Of relevance here is that the debtor in this case, F. Arthur Young, initially owed Ronald D. Mason $300,000 in punitive damages [1] and interest from a jury verdict in a wrongful discharge action in

---

[1] The punitive damages awarded against Young consist of $150,000 for a violation of 42 U.S.C. § 1983 and $150,000 for a violation of Oklahoma public

(continued...)

United States District Court for the Western District of Oklahoma. See Mason v. Oklahoma Tpk. Auth., No. CIV-93-1836R (W.D. Okla. Apr. 21, 1998) (Fourth Amended Judgment), aff'd, 182 F.3d at 1216. In July 1997, Young filed for bankruptcy under Chapter 7 of the Bankruptcy Code in United States Bankruptcy Court for the Western District of Oklahoma. Mason filed an adversary complaint, claiming the debt Young owed him was nondischargeable under 11 U.S.C. § 523(a)(6). Young obtained a discharge of his debts in United States Bankruptcy Court for the Western District of Oklahoma. See In re F. Arthur Young, No. 97-13747 (Bankr. W.D. Okla. July 30, 1997) (Discharge of Debtor). After a hearing before the bankruptcy court, Young converted to a Chapter 13 plan, see In re F. Arthur Young, No. 97-13747 BH (Bankr. W.D. Okla. Oct. 16, 1997) (Order), over the objection by Mason that Young's request for conversion to Chapter 13 was made in bad faith to avoid payment of the outstanding

---

[1](...continued)
policy. See Mason v. Oklahoma Tpk. Auth., No. CIV-93-1836-R, at 1 (W.D. Okla. Mar. 18, 1998) (Order). Although neither party has expressly raised the issue on appeal, for jurisdictional purposes we note that at the time of filing, it appeared that Young owed Mason only $150,000 in punitive damages, thus meeting the requirements for filing under Chapter 13. See 11 U.S.C. § 109(e); Comprehensive Accounting Corp. v. Pearson (In re Pearson), 773 F.2d 751, 756 (6th Cir. 1985) ("[S]ection 109(e) considers debts as they exist at the time of filing, not after a hearing." (citing In re King, 9 B.R. 376 (Bankr. D. Or. 1981)). But see, e.g., Lucoski v. IRS (In re Lucoski), 126 B.R. 332, 337 (S.D. Ind. 1991) (rejecting Pearson's reasoning).

- 3 -

judgment in favor of Mason because—according to Mason—that debt would not likely have been discharged under Chapter 7 but would be under Chapter 13.[2]

Pursuant to 11 U.S.C. §§ 1321 and 1322, Young filed a Chapter 13 plan with the bankruptcy court, providing for monthly payments of $818.60 for a term of thirty-six months, to be divided into monthly payments of $321.26 to a Cadillac dealer for finance payments on Young's used Cadillac, with further amounts to be divided between Young's attorney and other creditors among whom Mason was not included. Any remainder was then to be divided among unsecured general creditors like Mason. Mason again objected, on the ground that the plan was proposed in bad faith. The bankruptcy court agreed. As evidence of Young's bad faith, the court pointed to his proposal of a minimum thirty-six-month plan rather than a sixty-month plan, suggesting that Young's plan made "no effort whatsoever to reduce [Young's] only non-priority unsecured debt [to Mason], even though conceding that the debt would not be dischargeable in a Chapter 7 case." In re Francis Arthur Young III, No. BK-97-13747-LN, at 12 (Bankr. W.D. Okla. Feb. 18, 1998) (Order).

---

[2] Young did not dispute that the debt to Mason would not likely be dischargeable in a Chapter 7 case. We agree with the parties that a debt falling under 11 U.S.C. § 523(a)(6) and therefore non-dischargeable under Chapter 7 may nevertheless be dischargeable under Chapter 13, 11 U.S.C. § 1328(a). See Graves v. Myrvang, No. 99-35328, 2000 WL 1724818, at *4 (9th Cir. Nov. 21, 2000); Handeen v. LeMaire (In re LeMaire), 898 F.2d 1346, 1348 (8th Cir. 1990).

In February 1998, Young filed an amended Chapter 13 plan, providing for a sixty-month duration and otherwise resembling his earlier plan. After a hearing, the court considered his amended plan, concluding as follows:

> It appears to this court that debtor's prospective ability to pay the amount of [the punitive damage] awards [against Young] . . . with post-judgment interest . . . is virtually nil. If during the five-year term of debtor's [current] plan, debtor's employment or compensation fortunes significantly brighten, modification of his plan may result in a greater percentage of the obligation to Mason being paid than is presently proposed. Mason should be advised, however, that a debtor who has sought the protections of bankruptcy, and who meets the obligations of [11 U.S.C.] § 1325(a) for confirmation of a plan over the maximum term permitted by law, need not be turned away and forced to sell apples on the streets in every case in order to satisfy an impossibly large unsecured obligation, however egregious may have been the conduct which gave rise to the obligation.
>    Debtor proposes to obligate himself to making Chapter 13 plan payments for the maximum period permitted by law, in an amount equal to his total projected disposable income, based as it must be upon debtor's current level of income and reasonably necessary expenses. While this is undoubtedly not enough for Mason, who apparently would not be satisfied with less than the infliction of constant pain and suffering on debtor forever, it is all that the legitimate policies of bankruptcy can, or should, demand in the circumstances presented here.

In re Francis Arthur Young III, No. BK-97-13747-LN, at 6-7 (Bankr. W.D. Okla. Apr. 28, 1998) (Order). The court confirmed the proposed plan. See id. at 7.

Mason thereupon appealed to the BAP. The BAP affirmed, holding that "[t]he issue of whether a case is properly converted [from Chapter 7 to Chapter 13] should be appealed within ten days of the entry of a bankruptcy court's order," and therefore the appeal of that issue was untimely. Mason v. Young (In re Young), 237 B.R. 791, 795 (B.A.P. 10th Cir. 1999). With regard to the issue

- 5 -

of whether the bankruptcy court properly confirmed Young's Chapter 13 plan, the BAP held that the plan was proposed in good faith under 11 U.S.C. § 1325(a)(3), see id. at 799, and that Young was in compliance with 11 U.S.C. § 1325(b)(1)(B) as the bankruptcy court had found because he was devoting all of his disposable income to repaying his debts under the plan, see id. at 800. This appeal followed.

## II

We review de novo the finality and timeliness determinations of the BAP as well as the bankruptcy court's decision to allow, as a matter of law, the conversion to Chapter 13 proceedings after a Chapter 7 discharge, and review for clear error the bankruptcy court's factual determination that Young's Chapter 13 plan was proposed in good faith. See Phillips v. White (In re White), 25 F.3d 931, 933 (10th Cir. 1994).

## A

Underlying the instant dispute is the fundamental difference between bankruptcy under Chapter 7 and Chapter 13. As a general matter, under Chapter 7, the debtor's assets are liquidated and the proceeds distributed among the creditors. See 2 Epstein et al., Bankruptcy 278-80 (1992). Both parties agree that under Chapter 7, Young's full debt to Mason would not have been discharged. Under Chapter 13, on the other hand, the debtor's assets are not

liquidated at all. Rather, the plan agreed to by the debtor and the court is paid over a period of years out of the debtor's disposable income. See id. at 601-03.

Preliminary to reaching the merits of whether the conversion in this case was proper, we must ask whether the conversion to Chapter 13 (before a Chapter 13 plan was approved) was a final, immediately appealable order rendering untimely Mason's appeal subsequent to approval of the Chapter 13 plan. This Circuit's broad rule of finality in bankruptcy actions was enunciated in Magic Circle Energy 1981—A Drilling Program v. Lindsey (In re Magic Circle Energy Corp.), 889 F.2d 950, 953 (10th Cir. 1989): "To be final and appealable, the district court's order must end the litigation and leave nothing to be done except execute the judgment." However, in Cascade Energy & Metals Corp. v. Banks (In re Cascade Energy & Metals Corp.), 956 F.2d 935, 939 (10th Cir. 1992), we enunciated a more flexible test with different criteria of finality, namely: "(1) the posture of an appellant's claim within a particular adversary proceeding or discrete unit, and (2) what further proceedings are envisioned by the district court's order." Whether we employ the In re Magic Circle or the In re Cascade Energy test, it is clear that an order under Chapter 13 is not final until a Chapter 13 plan has been approved. Otherwise, it would be impossible for creditors to determine in advance whether their interests truly had been adversely affected. The effect of the bankruptcy court's ruling in the Chapter 13 context only

- 7 -

becomes clear after the bankruptcy court has approved a Chapter 13 plan providing for the allocation of disposable income over a fixed period of months. On the other hand, under Chapter 7, once the debtor's assets have been liquidated, it is virtually impossible to reassemble them, and therefore an order converting to Chapter 7 is necessarily more final in nature than an order converting to Chapter 13.    See Vista Foods U.S.A., Inc. v. Unsecured Creditors' Comm. (In re Vista Foods U.S.A., Inc.)   , 202 B.R. 499, 500 (B.A.P. 10th Cir. 1996).  The BAP in the instant case erred in applying the reasoning of a Chapter 7 conversion to a conversion under Chapter 13 and should have allowed Mason to appeal the bankruptcy court's decision to permit the "Chapter 20" conversion [3] within ten days of the court's confirmation of Young's Chapter 13 plan.    See Fed. R. Bankr. P. 8002;   In re Hayes Bankr.  , 220 B.R. 57, 62 (N.D. Iowa 1998).   [4]  Due to our disposition below of the merits of Mason's claims, however, we need not reverse the BAP.  Rather, we affirm the judgment of the bankruptcy court on grounds different than those on which the BAP relied.    See United States v. Sandoval , 29 F.3d 537, 542 n.6 (10th Cir. 1994) ("We are free to affirm a district

---

[3]  "Successive filing of a Chapter 7 bankruptcy and a Chapter 13 plan is often referred to as a 'Chapter 20' situation." Pioneer Bank of Longmont v. Rasmussen (In re Rasmussen), 888 F.2d 703, 703 n.1 (10th Cir. 1989).

[4]  Because we so hold, we need not address Mason's other arguments regarding the BAP's decision not to entertain his appeal of the Chapter 20 conversion.

court decision on any grounds for which there is a record sufficient to permit conclusions of law, even grounds not relied upon by the district court.").

**B**

This brings us to the issue of whether the bankruptcy court erred in allowing Young to convert to Chapter 13 after he obtained discharge of his debt under Chapter 7.  While courts may disallow specific "Chapter 20" conversions under the peculiar circumstances of a given case, as a general matter the Bankruptcy Code and most courts are clear regarding the permissibility of such conversions:  "The debtor may convert a case under [chapter 7] to a case under chapter . . . 13 of this title at any time."  11 U.S.C. § 706(a);      see also  In re Mosby, 244 B.R. 79 (Bankr. E.D. Va. 2000) (collecting cases and concluding that permitting conversion to Chapter 13 even after a discharge under Chapter 7 is proper).  There is no evidence of congressional intent to the contrary.  As the Supreme Court stated in    Johnson v. Home State Bank   , 501 U.S. 78, 87 (1991),

> Congress has expressly prohibited various forms of serial filings.      See,
> e.g., 11 U.S.C. § 109(g) (no filings within 180 days of dismissal); §
> 727(a)(8) (no Chapter 7 filing within six years of a Chapter 7 or Chapter
> 11 filing); § 727(a)(9) (limitation on Chapter 7 filing within six years of
> Chapter 12 or Chapter 13 filing).  The absence of a like prohibition on
> serial filings of Chapter 7 and Chapter 13 petitions, combined with the
> evident care with which Congress fashioned these express prohibitions,
> convinces us that Congress did not intend categorically to foreclose the
> benefit of Chapter 13 reorganization to a debtor who previously has filed
> for Chapter 7 relief.    Cf. United States v. Smith   , 499 U.S. 160, 167 (1991)
> (expressly enumerated exceptions presumed to be exclusive).

Although there is always the potential for abuse of the bankruptcy process in such a conversion,

> the court is not without the means to deal with such attempts on a case by case basis. First, in every chapter 13 case there is a requirement of good faith and fair dealing for confirmation of a plan. . . . Additionally, a chapter 13 plan must provide creditors with at least as much as they would receive in a chapter 7 liquidation.

In re Mosby, 244 B.R. at 86-87 (citations omitted). The provisions of 11 U.S.C. § 1325 ensure that a Chapter 13 plan arising out of a conversion from Chapter 7 will be properly scrutinized by the bankruptcy court before the plan is confirmed, mitigating the danger of abuse. Once again, as the Supreme Court stated in Johnson, 501 U.S. at 87-88,

> The Bank's contention [that a Chapter 20 conversion should not be allowed to proceed] also fails to apprehend the significance of the full range of Code provisions designed to protect Chapter 13 creditors. A bankruptcy court is authorized to confirm a plan only if the court finds, inter alia, that "the plan has been proposed in good faith," § 1325(a)(3); that the plan assures unsecured creditors a recovery as adequate as "if the estate of the debtor were liquidated under chapter 7," § 1325(a)(4); that secured creditors either have "accepted the plan," obtained the property securing their claims, or "retain[ed] the[ir] lien[s]" where "the value . . . of property to be distributed under the plan . . . is not less than the allowed amount of such claim[s]," § 1325(a)(5); and that "the debtor will be able to make all payments under the plan and to comply with the plan," § 1325(a)(6). In addition, the bankruptcy court retains its broad equitable power to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Code.]" § 105(a). Any or all of these provisions may be implicated when a debtor files serially under Chapter 7 and Chapter 13.

In short, it is our considered judgment that a so-called "Chapter 20" conversion is both permissible under the Code and—given the requisite scrutiny by the bankruptcy courts—entirely proper. [5]

**C**

Be that as it may, Mason's third claim—that the bankruptcy court erred in determining Young's Chapter 13 plan was proposed in good faith as required by 11 U.S.C. § 1325(a)(3)—presents a closer question. As a general matter, a determination of good faith must be made on a case by case basis, looking at the totality of the circumstances. See Pioneer Bank v. Rasmussen (In re Rasmussen), 888 F.2d 703, 704 (10th Cir. 1989). "In evaluating whether a debtor has filed in good faith, courts should be guided by the eleven factors set forth in Flygare v. Boulden, 709 F.2d 1344, 1347-48 (10th Cir. 1983), as well as any other relevant circumstances." Robinson v. Tenantry (In re Robinson), 987 F.2d 665, 668 (10th Cir. 1993) (footnote omitted). The eleven Flygare factors are:

> (1) the amount of proposed payments and the amount of the debtor's surplus; (2) the debtor's employment history, ability to earn and likelihood of future increases in income; (3) the probable or expected duration of the plan; (4) the accuracy of the plan's statements of the debts, expenses and percentage repayment of unsecured debt and whether any inaccuracies are an attempt to mislead the court; (5) the extent of preferential treatment between classes of creditors; (6) the extent to which secured claims are modified; (7) the type of debt sought to be discharged and whether any

---

[5] To the extent In re Jones, 111 B.R. 674, 680 (Bankr. E.D. Tenn. 1990), can be read as contrary authority, we reject its holding.

such debt is non-dischargeable in Chapter 7; (8) the existence of special circumstances such as inordinate medical expenses; (9) the frequency with which the debtor has sought relief under the Bankruptcy Reform Act; (10) the motivation and sincerity of the debtor in seeking Chapter 13 relief; and (11) the burden which the plan's administration would place upon the trustee.

Flygare, 709 F.2d at 1347-48 (quoting In re Estus, 695 F.2d 311, 317 (8th Cir. 1982)). But "the weight given each factor will necessarily vary with the facts and circumstances of each case." Id. at 1348.

In the bankruptcy court and BAP below and before us on appeal, Mason argues, in support of his good faith claim and in loose reliance on Flygare, that Young manipulated his income and expenses in such fashion as to avoid fully funding the Chapter 13 plan with "all of the debtor's projected disposable income" in violation of 11 U.S.C. § 1325(b). Mason raises a number of facts that, he asserts, demonstrate Young's effort to hide his true disposable income. If proven, that would be an obvious Flygare violation of the "accuracy of the plan's statements of the debts, expenses and percentage repayment of unsecured debt and whether any inaccuracies are an attempt to mislead the court." Flygare, 709 F.2d at 1347 (internal quotation omitted). Mason further argues that in various ways Young's conduct in the bankruptcy proceedings in this case likewise militates a conclusion that Young's Chapter 13 plan was not submitted in good faith under Flygare. We examine each of those arguments in turn.

1. The Cadillac

Young purchased a 1992 Cadillac from his brother-in-law, and his Chapter 13 plan calls for monthly payments of $321.26 to pay for that car. Mason argues that "Young's post-petition decision to purchase a Cadillac, rather than leasing an automobile or purchasing a less expensive one, and his consequent inflation of his expenses to reduce the disposable income available for funding his plan, is indicative of a lack of good faith." (Appellant's Br. at 18.) The bankruptcy court rejected Mason's argument in this regard, stating that

> Mason makes much of debtor's purchase of a Cadillac automobile from his brother-in-law. . . . Mason offers no evidence that debtor paid more than the vehicle was worth, that the payments are excessive for the amount financed, or that the transaction was anything other than arm's-length. This court can not find that the purchase of a five-year-old automobile, albeit a Cadillac, with monthly payments of $321.26, represents an attempt by debtor to "manipulate" his expenses.

In re Francis Arthur Young III, No. BK-97-13747-LN, at 9 (Bankr. W.D. Okla. Feb. 18, 1998) (Order). The BAP affirmed that determination. See In re Young, 237 B.R. at 798-99. It is certainly true, as Mason points out, that monthly payments toward the purchase of the Cadillac decrease the amount of Young's disposable income available to service his debt to Mason. But that fact does not compel us to conclude that the foregoing determination of good faith by the

bankruptcy court is clearly erroneous. [6] Despite Mason's understandable

eagerness to collect what is owed him, Mason's argument in this regard is

tantamount to an assertion that the repayment of Young's debt to Mason is the

only legitimate use of Young's disposable income under the Chapter 13 plan at

issue in the instant case. We decline Mason's invitation to so hold.

2. Rental properties

Claiming that Young misrepresented to the bankruptcy court that he had

surrendered his interests in various rental properties to other creditors when in

fact he had transferred those interests to his erstwhile wife in 1995, Mason argues

that that constitutes a bad faith misrepresentation to the court and that the

transfer itself was intended to avoid satisfying the judgment against him. In this

regard, the bankruptcy court, in its order confirming Young's Chapter 13 plan,

held as follows:

> Mason asks the court to reconsider its determination that debtor did not
> state his debts inaccurately in an attempt to mislead the court. He refers to
> certain parcels of real property which debtor transferred to his then wife,
> from whom he has since been divorced, in 1995. Mason asserts that debtor
> misrepresented the facts with regard to those properties, and appears to
> believe that debtor should still have income from those properties with
> which to service his debts. Debtor responds that he has never denied

---

[6] The bankruptcy court might conceivably have held that the purchase of
even a used Cadillac constituted an unnecessarily lavish expense for an
automobile, as the court held in the context of the purchase of a new Corvette in
In re Rogers, 65 B.R. 1018, 1021-22 (Bankr. E.D. Mich. 1986). However, it was
not clear error for the court to decline to so hold.

transferring ownership of those properties, that he is still liable on the indebtedness against them, and that it is necessary for him to "surrender" his interest in them in order to discharge his personal liability upon that indebtedness at the successful conclusion of his plan. . . . [T]he court does not believe that reconsideration is necessary or that, if reconsidered, the result would change.

In re Francis Arthur Young III, No. BK-97-13747-LN, at 3-4 (Bankr. W.D. Okla. Apr. 28, 1998) (Order). Mason challenges the court's finding, arguing that the transfer itself occurred soon after the jury rendered its verdict against Young, indicating Young's intention to escape his debt to Mason. However, that is a credibility determination that is properly the province of the trier of fact—in this case the bankruptcy court—, and we may not disturb that trier of fact's credibility determinations on appeal. See Anderson v. City of Bessemer City, 470 U.S. 564, 575 (1985) ("[W]hen a trial judge's finding is based on his decision to credit testimony of one of two . . . witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error." (citations omitted)).

Mason also states that Young's representations were false, as evidenced by the fact that "[a]n investigator working for Mason's counsel determined from a search of the land records that, in fact, Young had not transferred, and could not transfer, any interest in the properties to the mortgage holders because he had previously transferred his interest in the properties to his wife, who continues to

- 15 -

own the properties." (Appellant's Br. at 23.) Young responds that he "still remains liable as a a joint mortgager on these properties." (Appellee's Br. at 16.) However, we need not resolve that dispute today. Mason's portentous reference to a hired investigator is wholly unsupported by citation to the record; the precise nature of the investigator's findings therefore remain, for our purposes, shrouded in an appellate fog. It is likewise unclear from appellant's brief whether he presented the mysterious investigator's findings to the bankruptcy court below. Thus, Mason has waived this argument. See Valley Improvement Ass'n v. United States Fid. & Guar. Corp., 129 F.3d 1108, 1119 (10th Cir. 1997). We simply discern no clear error in the lower court's good faith determination with regard to the rental properties.

3. Probable or expected duration of the plan

Citing Young's initial proposed thirty-six-month plan—rejected by the court—, Mason argues that the proposal and subsequent amendment to sixty months comprises "yet further evidence of Young's lack of good faith." (Appellant's Br. at 26.) We disagree.

As noted, Young's initial Chapter 13 plan was rejected by the court on the ground that it did not represent his best efforts to satisfy his creditors, especially Mason. Young thereupon extended the plan period to sixty months, and the court confirmed that amended plan as having been proposed in good faith. Thus, the

court properly scrutinized and rejected the first plan, which may well have been made in bad faith as the court found. See In re Pickering, 195 B.R. 759, 767 (Bankr. D. Mont. 1996). But that is as far as Mason's argument can take him. Contrary to his suggestion, it was not then clear error for the court to accept the subsequent plan for the maximum sixty-month period under 11 U.S.C. § 1322(d). Rather, it was Young's right under the Bankruptcy Code to "modify the plan at any time before confirmation" within the parameters of 11 U.S.C. § 1322. 11 U.S.C. § 1323(a).

> 4. Type of debt sought to be discharged and whether any such debt is non-dischargeable in Chapter 7

Relying on our precedent in Pioneer Bank, 888 F.2d at 704-05, Mason argues that the totality of the circumstances of Young's Chapter 20 conversion in the present case is indicative of bad faith. Once again, we disagree. In Pioneer Bank, the only remaining debt to be discharged after the Chapter 7 liquidation was the debt to a single creditor. See id. at 703. Thus, there was a strong inference that the debtor in Pioneer Bank promulgated his Chapter 13 plan, which involved only $50 monthly payments over a period of thirty-six months, solely for the purpose of evading his remaining debt. Here, by contrast, there was ample evidence before the bankruptcy court that the Chapter 13 plan was not filed for the purpose of evading Young's debt to Mason. First, Young's monthly payments under the plan were far higher than the de minimis $50 paid by the

debtor in Pioneer Bank . Second, there were a number of other creditors to be satisfied under Young's plan, raising less concern that this Chapter 13 plan was promulgated with the purpose of bilking Mason. Third, the Chapter 13 plan in Pioneer Bank was for the minimum thirty-six-month term, whereas the instant plan stretches over the maximum term allowed by the Bankruptcy Code.

By the same token, the instant case is distinguishable from Gier v. Farmers State Bank of Lucas (In re Gier) , 986 F.2d 1326 (10th Cir. 1993). In Gier, there was strong evidence that the debtor had not been forthright about his true disposable income (which he declared amounted to only $75), see id. at 1328, 1330, and, as in Pioneer Bank , Farmers State Bank was the only real remaining creditor after the Chapter 7 proceedings , see id. at 1329. [7] Here, by contrast, there is no strong evidence that Young was not above board about his disposable income, and as discussed, there are other unsecured creditors implicated in his Chapter 13 plan.

We are of course mindful of the Pioneer Bank court's admonition that

> [A]lthough the discharge of an obligation which would be nondischargeable in Chapter 7 is not, standing alone, a sufficient basis on which to find bad faith or deny confirmation, it is a relevant factor to be considered in the § 1325(a)(3) good faith inquiry. Resort to the more liberal discharge provisions of Chapter 13, though lawful in itself, may well signal an "abuse of the provisions, purpose, or spirit" of the Act,

---

[7] This is true as well of In re Jacobs, 102 B.R. 239, 242 (Bankr. E.D. Okla. 1988), also cited by Mason.

- 18 -

especially where a major portion of the claims sought to be discharged arises out of pre-petition fraud or other wrongful conduct and the debtor proposes only minimal repayment of these claims under the plan.

888 F.2d at 705 (quoting Neufeld v. Freeman, 794 F.2d 149, 152-53 (4th Cir. 1986)) (further quotations omitted). But we are also mindful that "a Chapter 13 plan may be confirmed despite even the most egregious pre-filing conduct where other factors suggest that the plan nevertheless represents a good faith effort by the debtor to satisfy his creditors' claims." Id. (quoting Neufeld, 794 F.2d at 153). Such is the case here. Our examination of the bankruptcy court and BAP's determinations as well as our meticulous review of the record on appeal reveal no clear error in this regard.

5. Frequency with which the debtor has sought relief under the Bankruptcy Reform Act

In another variant of his argument that a Chapter 20 conversion constitutes bad faith, Mason argues that the fact Young sought such a conversion is evidence of his intent to frequently abuse the Bankruptcy Reform Act for the sole purpose of weaseling out of his debt to Mason. Although, as Mason and Pioneer Bank point out, Chapter 20 conversions may raise questions about the motives of the debtors seeking such conversions, see 888 F.2d at 705, in the present case, we are satisfied—for the reasons discussed above—that no improper motive was present

- 19 -

and that the bankruptcy court properly allowed the conversion to proceed and approved Young's Chapter 13 plan. [8]

We emphasize the proper balance in this case between competing principles comprising the guiding spirit of federal bankruptcy law. The Supreme Court

> has . . . acknowledged that a central purpose of the [Bankruptcy] Code is to provide a procedure by which certain insolvent debtors can reorder their affairs, make peace with their creditors, and enjoy "a new opportunity in life with a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt." Local Loan Co. v. Hunt, 292 U.S. 234, 244 (1934). But in the same breath that we have invoked this "fresh start" policy, we have been careful to explain that the Act limits the opportunity for a completely unencumbered new beginning to the "honest but unfortunate debtor." Id.

Grogan v. Garner, 498 U.S. 279, 286-87 (1991). The policy of allowing a fresh start does not license debtors to lightly rid themselves of the burden of their indebtedness without an honest attempt at repayment. Yet neither does that policy compel debtors, in Dickensian fashion, to labor for the rest of their lives under the crushing weight of gigantic debt; under our law, the world is not to be made a debtor's prison by a lifelong sentence of penury. While we appreciate Mason's frustration at Young's inability to repay the whole of his debt, the fact remains that Young filed a Chapter 13 plan with the bankruptcy court, arranging

---

[8] Based on the foregoing analysis and our review of the record, we likewise reject Mason's contention that Young failed to meet his burden of proof that he filed the plan in good faith.

therein to devote all of his disposable income to the repayment of his various debts, including his debt to Mason, for the maximum five-year period allowed by law. As discussed above, the bankruptcy court found Young's plan to have been filed in good faith, and we discern no clear error in that determination. [9]

## III

The judgment of the BAP is **AFFIRMED**.

---

[9] Mason argues that "Young has judicially admitted not simply that Mason's claim would not be dischargeable under Chapter 7, but that the bankruptcy was converted by Young to Chapter 13 for the specific purpose of permitting him to obtain the discharge of the debt." (Appellant's Br. at 39 (citing Appellant's App. at 175-76).) While we agree with Mason that one purpose of the Chapter 20 conversion was to deal with Young's non-dischargeable debt to Mason, we also agree with the Sixth Circuit that "[i]t is not conclusively bad faith for a debtor to seek to discharge a debt incurred through his own criminal or tortious conduct, but that factor may be considered." Hardin v. Caldwell (In re Caldwell), 895 F.2d 1123, 1127 (6th Cir. 1990) (citing Matter of Chaffin, 836 F.2d 215, 216 (5th Cir. 1988); 11 U.S.C. § 1328(a)).